**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William G. PATTERSON, Defendant-Appellant.**

**No. 85–1859.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1985.
Decided Jan. 9, 1986.

Burck Bailey, Fellers, Snider, Blankenship, et al., Oklahoma, Okl., for defendant-appellant.

James R. Ferguson, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

The defendant, William Patterson, filed a motion prior to trial requesting that the district court dismiss his indictment on the grounds that it violated the double jeopardy clause, the collateral estoppel doctrine, the compulsory joinder doctrine, and due process. In the alternative, he requested that the court exercise its supervisory power over the prosecution and require it to dismiss the indictment. The district court denied the motion and Patterson appeals. We remand to the district court for further consideration consistent with this opinion.

I

Patterson was initially indicted in a federal district court in Oklahoma for crimes arising from the collapse of the Penn Square Bank ("PSB") in Oklahoma City, Oklahoma. At the time of the PSB's collapse, Patterson was a vice president of PSB, charged with the responsibility of approving the energy loans made by the bank. After the collapse of the PSB, grand juries were convened in Oklahoma City, Chicago, Seattle, and other cities, to investigate the operations of the PSB and its relationship with the correspondent banks in those cities. These banks routinely engaged in loan participation agreements with other financial institutions wherein the larger bank ("up stream bank") would proportionately share or purchase part of a loan being made by a smaller bank ("down stream bank"), as the Penn Square Bank, to customers of the smaller bank. The participation of a larger bank in the loan is oft times necessary since the smaller bank's customers fre-

quently request loan amounts in excess of the smaller bank's legal lending capacity.

On July 17, 1984, a federal grand jury convened in Oklahoma City and returned a thirty-four count indictment, naming Patterson as the defendant. Subsequently, nine counts of the thirty-four count indictment were dismissed and a revised twenty-five count indictment, encompassing alleged criminal conduct involving a number of transactions, was filed with the court. The majority of the counts contained in the indictment charged that Patterson, in his capacity as head of the energy loans for PSB, willfully misappropriated the funds of PSB and several of its customers. As an example, the Oklahoma indictment in Count I alleges a scheme to defraud, in violation of 18 U.S.C. § 1343 (wire fraud), and lists the Continental Bank of Illinois, in an introductory paragraph, along with several other major banks that participated in loans with the PSB to provide funds to PSB's customers. This count, as other counts in the indictment, recite that Patterson caused a PSB customer to apply for and receive loans from PSB under false pretenses and that Patterson, upon receipt of this money, used the proceeds to repay those overdue loan payments of those customers he had previously approved for the granting of loans. Other counts in the Oklahoma indictment charged that Patterson, without proper customer authorization, wrote checks drawn on the customers' accounts to make payments on overdue loans of other PSB customers, in violation of 18 U.S.C. § 656 (theft and embezzlement or misapplication of funds by bank officer). In another count of the indictment, Patterson was explicitly charged with defrauding the Michigan National Bank, one of those banks listed in the introductory paragraphs of the indictment that had participated with the PSB in extending loans to PSB's customers.[1] The Oklahoma indictment finally charges Patterson with making false entries in the PSB's books in order that he might conceal his fraudulent activities, in violation of 18 U.S.C. § 1005 (fraudulent bank entries, reports and transactions). In September of 1984, after a three week trial, the jury acquitted Patterson of these charges.

The day prior to the return of the verdict in the Oklahoma trial, Patterson was indicted in the Northern District of Illinois for defrauding the Continental Bank of Illinois. Specifically, the Illinois indictment in Count I charged that Patterson along with John Lytle, the vice president of Continental Bank's Mid-Continent Division, and Jere Sturgis, a customer of the PSB, schemed to defraud Continental of its funds in violation of 18 U.S.C. § 1343. According to this indictment, Lytle would approve Continental Bank loans to the customers of PSB without investigating their credit worthiness or securing the proper collateral. The PSB would receive a one percent finder's fee on these loans made by the Continental Bank.[2] This count further charges that in exchange for Lytle's extending the loans to PSB's customers, Patterson lent funds to Lytle in excess of $500,000 at "favorable interest rates." Finally, Count I of the Illinois indictment alleges that Patterson arranged and personally guaranteed a loan at the Oklahoma City Bank to pay off Lytle's indebtedness to PSB. According to the government, in order to conceal this (Lytle's) loan from the Oklahoma City Bank, Jere Sturgis, the PSB customer, repurchased Lytle's share of an investment in a drilling exploration company at a grossly inflated price and Lytle used the proceeds from the sale of this investment to pay off his loan from the Oklahoma City Bank. Sturgis funded the repurchase of Lytle's investment through another loan received from the PSB. The indictment also charges, in other counts the underlying acts of theft and wire fraud employed by the defendants, in violation of 18 U.S.C. § 656 (theft and embezzlement or misapplication of funds by a bank officer) and 18

---

1. In contrast, Patterson was not explicitly charged with defrauding the Continental Bank of Illinois.

2. This "finder's fee" is the normal charge by the smaller bank for arranging the loan.

U.S.C. § 1343 (wire fraud), to support their scheme to defraud the Continental Bank.

In his argument for dismissal of the indictment before the district court, Patterson asserted that the Oklahoma indictment was broadly worded, including references to "up stream banks," such as the Continental Bank, and thus the government, in filing the Illinois indictment, was again attempting to prosecute him for defrauding the Continental Bank. Patterson contended that the government introduced evidence relating to the Illinois indictment at the Oklahoma trial and argued to the Oklahoma jury that as part of the scheme to defraud the PSB, Patterson also schemed to defraud the so-called "up stream" banks, including the Continental Bank of Illinois. For example, Patterson contended that the allegations made against him in Count fifteen of the Illinois indictment[3] were previously litigated in the Oklahoma trial under Counts two and ten of that indictment as the government introduced evidence at the Oklahoma[4] trial in an attempt to convict Patterson of these counts.[5] Patterson requested that the court dismiss the Illinois indictment on the grounds either of double jeopardy, collateral estoppel, compulsory joinder, or due process. In the alternative, Patterson requested that the district court invoke its inherent power over the prosecutor to prevent what he alleged to be an abuse of power on the part of the government in pursuing the Illinois indictment after he had been cleared of the same wrongdoing by the Oklahoma jury. The government responded that the Oklahoma indictment covered only those transgressions of the law dealing with Patterson's alleged defrauding of the Penn Square

Bank and that it did not allege, much less offer any proof or endeavor to prove, that Patterson attempted to defraud the up stream banks referred to therein, such as the Continental Bank of Illinois.[6]

The district court, after reviewing Patterson's motion to dismiss the Illinois indictment, denied the same. We note that at the time the court made this ruling, the transcript of the Oklahoma trial was not available as it had not yet been entirely transcribed. The district court stated that:

"Count I of the Oklahoma indictment contains a lengthy recitation of the background facts concerning Patterson's alleged scheme to defraud. Numerous individuals, corporations, partnerships and banking institutions are mentioned in the recitation, and, if one had to rely on just the first 5½ pages of Count I, it would be difficult to tell just who is alleged to have been victimized by the scheme."

After reviewing the Oklahoma and Illinois indictments, the district court found that the counts contained in the Oklahoma indictment alleged only schemes to defraud the Penn Square Bank and its customers, but did not allege that Continental was one of the victims of these schemes to defraud; thus, the court found the indictments separate and distinct. The district court concluded that:

"the intent [of the alleged scheme to defraud the Penn Square Bank] may indeed have been to benefit the Penn Square at the expense of other banks, including Continental. In short, an intent to defraud Penn Square and an intent to defraud Continental are two different things; they could combine in a particular instance, but they need not."

3. This count charged Patterson with aiding and abetting Lytle in willfully misapplying $2.5 million of Continental funds in extending a loan to a Mr. Singletary, a customer of the PSB.

4. Count ten of the Oklahoma indictment charges that Patterson "did cause the funding of a Note Number 30131 ... in the name of Tatum Singletary."

5. We mention Count fifteen of the Illinois indictment only as an example of Patterson's allegation that the issues litigated during the Okla-

homa trial were charged in the Illinois indictment and may be litigated during the Illinois trial. We express no opinion as to the merits of his arguments.

6. The government contends that the reference to the Continental Bank of Illinois in the Oklahoma indictment was merely background material given to the jury to help them understand the scope, magnitude and complexity of the scheme to defraud the PSB.

On appeal, Patterson reasserts that the filing of the Illinois indictment violates the double jeopardy clause, the doctrine of collateral estoppel, the doctrine of compulsory joinder, and due process. In the alternative, he requests that this court exercise its supervisory power over the prosecutor to prevent him from pursuing the crimes charged in the Illinois indictment as the government is abusing its powers in attempting to reprosecute him for charges that he has previously been acquitted of.[7]

## II

▮ The double jeopardy clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Underlying this Fifth Amendment double jeopardy protection is the belief that the state, endowed with all of its resources, should not be allowed to make repeated attempts to convict an individual for a single offense. *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

> "This constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: '(1) It protects against a second prosecution for the same offense after acquittal. [ (2) I]t protects against a second prosecution for the same offense after conviction. [ (3) ] And it protects against multiple punishments for the same offense.' "

*Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980) (*quoting North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)); *see also Boston Mu-*

*nicipal Court v. Lydon*, 466 U.S. 294, 306, 104 S.Ct. 1805, 1813, (1984) (plurality opinion); *United States v. Jefferson*, 714 F.2d 689, 703 n. 29 (7th Cir.1983). Patterson contends that the Government, in pursuing the Illinois indictment, intends to prosecute him for offenses for which he has previously been tried and acquitted before a jury of his peers in Oklahoma. We analyze his argument pursuant to the tests set forth by the Supreme Court.

There are a number of facets to the application of the Fifth Amendment's Double Jeopardy clause and, thus, the Supreme Court has developed several analyses to determine whether or not a subsequent prosecution following a previous acquittal violates the Fifth Amendment's double jeopardy provisions. The Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) set forth the classic test for determining whether or not two offenses are sufficiently distinguishable to permit a subsequent prosecution after a previous acquittal. The *Blockburger* test is satisfied, notwithstanding the fact that a substantial overlap in the quantum of proof offered to establish the crimes, if each of statutory offenses require proof of a fact that the other does not require. *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (*quoting Iannilli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975)). In characterizing the *Blockburger* test, the Supreme Court has stated: "We recognize that the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented

---

7. The Supreme Court has held that an appeal which raises the issue of double jeopardy satisfies the collateral exception to the final judgment rule (*see Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)), and thus is a "final" decision within the meaning of 28 U.S.C. § 1291. *See Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (holding that the denial of a motion to dismiss an indictment on double jeopardy grounds results in an appealable final order). Although this case has not proceeded to trial and thus the district court's decision is not

final in that it does not terminate the criminal proceedings in the district court, pursuant to the *Abney* decision, the double jeopardy and collateral estoppel issues are appealable at this juncture of the proceeding. The Government concedes that the double jeopardy and collateral estoppel issues may be appealed, but contends that the compulsory joinder, due process and supervisory powers arguments are not appealable at this time. We, however, need not reach this issue of appealability as we are remanding this case for further review.

at trial." *Vitale*, 447 U.S. at 416, 100 S.Ct. at 2265.

██ Applying *Blockburger* to the indictments before us, the thrust of the statutory offenses contained in the Oklahoma indictment is that Patterson engaged in a scheme to defraud the PSB and its customers of their funds in order that he might conceal his alleged careless and suspect lending activities. On the other hand, the Illinois indictment charges that Patterson, along with Lytle and Sturgis, devised a scheme to defraud the Continental Bank of Illinois of its funds. Since the indictments on their face charge two separate and distinct crimes or schemes to defraud with each requiring a different quantum of proof independent of the other, the Illinois indictment satisfies the *Blockburger* double jeopardy test and thus the Illinois indictment does not violate the double jeopardy clause.

The fact that the indictments satisfy the *Blockburger* test does not end our analysis as the Supreme Court has developed other criteria when evaluating the validity of a double jeopardy claim. The Fifth Amendment's double jeopardy clause also embraces the doctrine of collateral estoppel. *Ashe v. Swenson*, 397 U.S. 436, 446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Our remand of this case to the district court is to examine Patterson's allegations in light of the collateral estoppel doctrine. At early common law, collateral estoppel was not granted recognition as a principle of constitutional law. This, however, has changed with the advent of modern criminal statutes:

> "It is true, as this court said in *Hoag v. New Jersey* [356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958)], *supra,* that we have never squarely held collateral estoppel to be a constitutional requirement. Until perhaps a century ago, few situations arose calling for its application. For at common law, and under early federal criminal statutes, offense categories were relatively few and distinct. A single course of criminal conduct was likely to yield but a single offense.... In

more recent times, with the advent of specificity and draftmanship and the extraordinary proliferation of overlapping and related statutory offenses, it became possible for prosecutors to spin out a startlingly numerous series of offenses from a single alleged criminal transaction.... As the number of statutory offenses multiplied, the potential for unfair and abusive reprosecutions became far more pronounced.... The federal courts soon recognized the need to prevent such abuses through the doctrine of collateral estoppel, and it became a safeguard firmly embedded in federal law."

*Ashe,* 397 U.S. at 445 n. 10, 90 S.Ct. at 1195 n. 10 (citations omitted); *Feela v. Israel,* 727 F.2d 151, 154 (7th Cir.1984). Thus, the Supreme Court recognized in *Brown* that:

> "The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involved the same offense. Even if two offenses are sufficiently different to prevent the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first."

*Brown,* 432 U.S. at 167, 97 S.Ct. at 2226 (citing *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). In *Ashe* three men broke into a gaming room and robbed six poker players at gunpoint. The defendant was charged with six separate counts of armed robbery, and was initially brought to trial for robbing one of the victims. The only issue presented to the jury was whether the defendant was in fact one of the robbers; the jury acquitted the defendant. Subsequently, the state brought the defendant to trial for the robbery of another participant in the poker game, but this time the poker players' testimony identifying the defendant as one of the robbers was much stronger than their testimony at the first trial; the defendant was convicted. The Supreme Court reversed, holding that the state could not re-prosecute the defendant since it would

require relitigating once more the same issue as to whether in fact the defendant was one of the robbers. *Ashe,* 397 U.S. at 446, 90 S.Ct. at 1195. Thus, *Ashe* clearly stands for the principle that the government may not put a man in jeopardy more than once for the same crime. In defining the scope of the protections offered by the collateral estoppel doctrine, the Supreme Court in *Ashe* stated that "[i]t means that when an issue of ultimate fact has been determined by a valid judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194. The Supreme Court set forth the procedure to employ when analyzing whether or not the jury decided an issue in the defendant's favor in the earlier trial which the state seeks to litigate in the subsequent trial:

> "The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archiac approach of a nineteenth century pleading book, but with realism and rationality. *Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach required a court to 'examine the record of a prior proceeding taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' "*

*Id.* at 444, 90 S.Ct. at 1194 (citations omitted) (emphasis added).

█ The Illinois indictment charges that Patterson schemed to defraud the Continental Bank of Illinois, and in furtherance of this scheme to defraud Patterson engaged in numerous acts of theft, embezzlement (18 U.S.C. § 656) and wire fraud (18 U.S.C. § 1343). Count I of the Oklahoma indictment is broadly worded, and while it does not specifically charge that the Conti-

nental Bank was a victim of Patterson's scheme to defraud the PSB and its customers, the indictment recites only in its introductory paragraph, as background material, that the Continental Bank, along with other banks, participated in PSB loans made to PSB's customers through Patterson. Patterson alleges that the prosecutor, during his opening and closing remarks, although not referring specifically to the Continental Bank, referred to the up stream banks as victims of Patterson's scheme to defraud. Patterson also alleges that the proof needed to establish the charges contained in the Illinois indictment was introduced in evidence at the trial in Oklahoma in an attempt to establish many of the charges contained in the Oklahoma indictment.[8] Unfortunately, as pointed out earlier, the complete record of the trial was not available to the district court at the time Patterson filed his motion because it had not been transcribed, and thus the district court was forced to rule after examination of the indictments. We believe in fairness that Patterson has raised questions as to whether the issues litigated during the Oklahoma trial may conceivably be re-litigated in the Illinois trial and thus may be barred by the doctrine of collateral estoppel. While in many cases examination of the indictments may be sufficient to dispose of a challenge on Fifth Amendment Double Jeopardy grounds we feel compelled under the factual situation presented in this case—the absence of the district court's review of the record of the Oklahoma trial—to direct the district court to review the transcript of the Oklahoma trial consistent with the Supreme Court's admonition in *Ashe. See United States v. Castro,* 629 F.2d 456, 465 (7th Cir.1980); *United States v. Larkin,* 605 F.2d 1360, 1369–70 n. 26 (5th Cir.1979); *cf. United States v. Roman,* 728 F.2d 846, 854 (7th Cir.1984). Further, the court should make the appropriate findings, pursuant to Fed.R.Crim.P.

---

8. For instance, as discussed in section I of this opinion, Patterson argues that the charges contained in Count fifteen of the Illinois indictment were essentially the same charges as those con-

tained in Counts two and ten of the Oklahoma indictment and were resolved in his favor by the not guilty verdict.

12(e), as to whether the government is collaterally estopped from litigating any of the counts contained in the Illinois indictment.

We do not express any position as to the merits of Patterson's arguments; rather we are remanding this case for the sole purpose of allowing the district court to examine and determine Patterson's arguments, making the appropriate findings pursuant to Fed.R.Crim.P. 12(e), after reviewing the Oklahoma trial transcript. In the Seventh Circuit, "a defendant who argues that *Ashe* is applicable to his case carries the burden of establishing that the issue he seeks to foreclose from consideration was 'necessarily' resolved in his favor in the prior proceeding." *Castro*, 629 F.2d at 465; *Roman*, 728 F.2d at 854 (citing *United States v. West*, 670 F.2d 675, 681 (7th Cir.), *cert. denied*, 457 U.S. 1124, 1139, 102 S.Ct. 2944, 2972, 73 L.Ed.2d 1340 (1982)). Thus, on remand, Patterson bears the ultimate burden of convincing the district court that the Illinois indictment, or possibly any count in the indictment, should be barred by the doctrine of collateral estoppel.[9]

The decision of the district court is RE-VERSED and this case is REMANDED for further consideration consistent with this opinion.

---

9. Since we do not reach the merits of Patterson's other arguments addressing compulsory joinder, due process and the supervisory power of the court, and since we are remanding this case for further consideration of Patterson's collateral estoppel argument after the district court has had an opportunity to examine the transcript of the Oklahoma trial, we request that the district court also make appropriate findings as to these arguments. We express no position as to the validity of these arguments.