**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**William G. PATTERSON,**
**Defendant-Appellant.**

**No. 87–1457.**

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1987.

Decided Aug. 19, 1987.

Burck Bailey, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for defendant-appellant.

James R. Ferguson, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, CUDAHY, and MANION, Circuit Judges.

PER CURIAM.

This appeal raises for the second time the issue of whether the government is collaterally estopped from prosecuting William Patterson on charges of wire fraud and misapplication of bank funds. In a previous appeal, we held that the government's second indictment of Patterson did not violate the Double Jeopardy Clause. We remanded the case, however, on the issue of collateral estoppel because the district court decided that question without examining the transcript from the first trial which was held in a district court in Oklahoma. *See United States v. Patterson,* 782 F.2d 68 (7th Cir.1986). Accordingly, the district court reviewed the transcript of the Oklahoma trial, and the judge concluded that the government was not

collaterally estopped from litigating any of the counts contained in the second indictment. Patterson appeals, and we affirm.

## I.

William Patterson was vice president in charge of approving energy loans at Penn Square Bank (PSB) in Oklahoma. In July 1982, the federal government declared PSB insolvent. Grand juries were convened in Oklahoma City, Chicago, Seattle, and other cities to investigate PSB's operations and its relationships with correspondent banks in those cities. These correspondent banks (or "upstream banks") generally participate in loan agreements with smaller banks such as PSB ("downstream banks"). The upstream bank proportionately shares or purchases part of a loan made to customers of the downstream bank. This practice assists the smaller banks to loan customers amounts in excess of their legal lending limits.

On July 17, 1984, a federal grand jury in the Western District of Oklahoma indicted Patterson. The twenty-five count indictment alleged criminal conduct involving a number of transactions, the majority of which charged Patterson, as PSB's officer in charge of energy loans, with willfully misappropriating the funds of PSB and several of its customers. For example, Count I of the Oklahoma indictment alleged a scheme to defraud, in violation of 18 U.S.C. § 1343 (wire fraud). In an introductory paragraph, the indictment listed several correspondent banks that participated in loan agreements, including Chase Manhattan Bank, Northern Trust Company, Seattle First National Bank, Michigan National Bank, and Continental Illinois National Bank. This count and others in the indictment state that Patterson caused PSB customers to apply for and receive loans from PSB under false pretenses and that he used the proceeds to repay overdue loan payments of customers previously approved for loans.

Other counts in the Oklahoma indictment charged that Patterson, without proper authorization, wrote checks drawn on customers' accounts to pay overdue loans of other PSB customers, in violation of 18 U.S.C. § 656 (theft and embezzlement or misapplication of funds by bank officer). Another count explicitly charged Patterson with scheming to defraud the Michigan National Bank, one of the upstream banks listed in the introductory paragraphs. The Oklahoma indictment did not, however, specifically charge Patterson with scheming to defraud any of the other upstream banks, including Continental Illinois. The Oklahoma indictment finally alleged that Patterson made false entries in PSB's books to conceal his fraudulent activities, in violation of 18 U.S.C. § 1005 (fraudulent bank entries, reports, and transactions). In September 1984, after a three week trial, the jury acquitted Patterson on all of these charges.

The day the Oklahoma jury acquitted Patterson, a grand jury in the Northern District of Illinois indicted him on sixteen criminal charges.[1] The district court eventually dismissed four counts because the statute of limitations had expired. The remaining counts charge Patterson and two other defendants, John Lytle, the vice president of Continental Bank's Mid-Continent Division, and Jere Sturgis, a customer of PSB, with a scheme to defraud Continental of its funds in violation of 18 U.S.C. § 1343 and theft in violation of 18 U.S.C. § 656.

According to the Illinois indictment, Lytle would approve Continental Bank loans to PSB customers without assessing their creditworthiness or securing the proper collateral.[2] PSB would then receive the one percent finder's fee which is normally charged by a smaller bank for arranging a loan. The indictment further alleges that

---

1. The Illinois grand jury indicted Patterson before the conclusion of the Oklahoma trial, but the Oklahoma district judge ordered it sealed pending the conclusion of the jury deliberations and the trial in Oklahoma.

2. For example, the indictment charges that Lytle made loans to the following PSB customers in violation of Continental's lending policies and procedures: $8,000,000 to Bartex Corporation; $4,000,000 to Joe Dan Trigg; $3,500,000 and $2,700,000 to Harold H. Clifford, III; and $2,250,000 to Tatum C. Singletary.

in exchange for Lytle's extending the loans to PSB customers, Patterson lent more than $500,000 to Lytle at "favorable interest rates."

The Illinois indictment also alleges that Patterson arranged and personally guaranteed a $565,000 loan for Lytle at the Community Bank of Oklahoma to pay off Lytle's indebtedness to PSB. According to the government, in order to conceal Lytle's loan from the Community Bank, Jere Sturgis repurchased Lytle's share of an investment in a drilling exploration company at a grossly inflated price and Lytle used the proceeds to pay off his loan from the Community Bank. Sturgis funded his repurchase of Lytle's investment through another loan from PSB.

Patterson moved to dismiss the Illinois indictment on the grounds of either double jeopardy or collateral estoppel.[3] The district court denied Patterson's motion, and he appealed. We decided that the Illinois indictment did not violate the Double Jeopardy Clause. Applying the test the Supreme Court developed in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), this court decided that the offenses charged by the Illinois indictment required proving facts that the offenses charged in the Oklahoma indictment did not.

> [T]he thrust of the statutory offenses contained in the Oklahoma indictment is that Patterson engaged in a scheme to defraud the PSB and its customers of their funds in order that he might conceal his alleged careless and suspect lending activities. On the other hand, the Illinois indictment charges that Patterson, along with Lytle and Sturgis, devised a scheme to defraud Continental Bank of Illinois of its funds. Since the indictments on their face charge two sep-

arate and distinct crimes or schemes to defraud with each requiring a different quantum of proof independent of the other, the Illinois indictment satisfies the *Blockburger* double jeopardy test and thus the Illinois indictment does not violate the double jeopardy clause.

782 F.2d at 73. We remanded the case, however, for the district court to examine Patterson's allegations of collateral estoppel because the judge had ruled on this issue before the complete record of the Oklahoma trial was available. *Id.* at 74.

On remand, the district judge inspected the entire Oklahoma trial record, with particular emphasis on the opening statement, the closing argument, the jury instructions, and the indictment. The judge noted that the instructions and arguments stressed that the government needed to prove that Patterson intended to defraud PSB, and that the jury, in all likelihood, accepted Patterson's theory that it would be illogical for him to intend to injure PSB because he would have been injuring himself as a major shareholder. The district court found that the references to the upstream banks at trial were background information or for the purpose of showing injury to PSB. The judge denied the motion to dismiss on collateral estoppel grounds, concluding that the Oklahoma acquittal was most likely based on the finding that there was no fraud against PSB, an issue wholly unrelated to any claim of fraud against Continental. Patterson appeals from this ruling.[4]

## II.

As this court noted in Patterson's first appeal, the *Blockburger* test is not the only standard for determining whether successive prosecutions violate the Fifth Amendment's guarantee against double jeopardy.

---

3. He also argued that the court should dismiss on due process or compulsory joinder grounds, and he requested the district court to invoke its inherent power over the prosecution to prevent him from being tried again.

4. Although 28 U.S.C. § 1291 limits appellate jurisdiction to "final decisions," we have jurisdiction to hear this appeal even though the case has not proceeded to trial. *See Abney v. United*

*States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (federal appellate courts have jurisdiction on appeal from an order denying a pretrial motion to dismiss an indictment on double jeopardy grounds). As will be discussed in more detail, Patterson's collateral estoppel claim is based upon the Fifth Amendment's guarantee against double jeopardy.

782 F.2d at 73. That guarantee also embodies the principles of collateral estoppel. *Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Collateral estoppel in the context of multiple prosecutions "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194. Here, the Illinois indictment charges Patterson with a scheme to defraud Continental Illinois; Patterson claims that the Oklahoma jury conclusively determined that he did not scheme to defraud Continental Illinois. Thus, according to Patterson, collateral estoppel bars the government from prosecuting him under the Illinois indictment.

Patterson carries the burden of proving that the Oklahoma jury necessarily determined that he did not scheme to defraud Continental Illinois. *See United States v. Kimberlin,* 805 F.2d 210, 232 (7th Cir. 1986). This burden is particularly onerous where the first acquittal involved the crime of conspiracy, *see United States v. Castro,* 629 F.2d 456, 465 (7th Cir.1980), a crime governed by principles similar to those governing a scheme to defraud—the crime charged against Patterson in Oklahoma. *See United States v. Read,* 658 F.2d 1225, 1239 (7th Cir.1981) (conspiracy and scheme to defraud embrace analogous, though not identical, concepts). To prevail on his collateral estoppel claim, Patterson must show more than that the Oklahoma jury might have, or even probably, found he did not scheme to defraud Continental Illinois. If a rational jury could have acquitted Patterson on any basis other than a finding that he did not scheme to defraud Continental Illinois, then collateral estoppel does not bar the government from prosecuting him under the Illinois indictment. *See Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194; *see also Baker v. Duckworth,* 752 F.2d 302, 307 (7th Cir.1985) (to accord collateral estoppel effect to previous jury's decision, court must be able to "determine with certainty the basis for the first jury's decision"). To determine whether the Oklahoma jury necessarily established that Patterson did not

scheme to defraud Continental Illinois, we must examine the record of the Oklahoma proceeding, including the pleadings, evidence, jury instructions, and any other relevant matter. *See Kimberlin,* 805 F.2d at 232.

### A. *The Oklahoma Indictment*

Patterson submits that the Oklahoma indictment contained language that "could have permitted" a jury to find that he was involved in a scheme to defraud the upstream banks, including Continental Illinois. But "could have permitted" falls far short of the burden Patterson must meet to collaterally estop the government from prosecuting the scheme alleged in the Illinois indictment. That shortcoming notwithstanding, we have examined the Oklahoma indictment and the trial record to determine whether the jury had reason to believe it was required to find no scheme to defraud Continental Illinois before it could acquit Patterson.

The Oklahoma indictment mentions Continental Illinois three times. The first reference identifies it as one of five banks that participated in PSB customer loans. This reference was incidental to a lengthy recitation of background information for a later paragraph which, as we held in Patterson's first appeal, charged him with a scheme to defraud PSB and its customers in an attempt to conceal his alleged careless and suspect lending activities. 782 F.2d at 73. Michigan National Bank was among the participating banks named, and Count V of the Oklahoma indictment specifically charged Patterson with scheming to defraud Michigan National. The indictment did not, however, name Continental Illinois as one of the victims of Patterson's scheme.

The remaining references to Continental Illinois are likewise collateral to the primary charge in the Oklahoma indictment. Count III identified Continental as the source for the transfer of four million dollars to PSB, and Count XX alleged that Patterson misapplied PSB funds when he purchased a loan from Continental Illinois. Count XX does not allege, however, that

Patterson intended to defraud Continental when he purchased this loan; in fact, the count alleged that it was very unlikely that the borrower would repay the loan so that the purchase of the loan would, in effect, be beneficial to Continental. Because these references to Continental in the Oklahoma indictment merely formed a framework for the charge that Patterson schemed to defraud PSB, we cannot determine with certainty from the language in the indictment that the jury found that Patterson did not scheme to defraud Continental when they found him not guilty.

B. *Evidence Introduced by the Government*

Patterson claims that the government introduced certain evidence at the Oklahoma trial that placed in issue the heart of the Illinois indictment: Patterson's relationship with Lytle and the allegation that Patterson corrupted Lytle's independence and loyalty to Continental. This evidence includes exhibits and a taped conversation concerning the transaction between Lytle and Sturgis (where Sturgis repurchased Lytle's share in a drilling exploration company), the testimony of a former Continental Bank employee about loans that Lytle received from PSB, and the government's cross-examination of Patterson about why he approved the Sturgis loan that enabled Lytle to recoup his investment in the drilling exploration company. Patterson argues that this evidence afforded the jury the opportunity to convict Patterson of a scheme to defraud Continental Illinois and the not guilty verdict puts an end to this question.

The taped conversation played to the Oklahoma jury was between Patterson and Sturgis's accountant, Gary Roberts, concerning a million dollar increase in a loan to Sturgis from PSB. Although the conversation was not transcribed by the court reporter so that it is not a part of the Oklahoma record before us, the government explains that Patterson advised Roberts in the tape that he would make the necessary entries in the books of PSB to fund the loan. Patterson also advised Roberts that part of the Sturgis loan proceeds were being forwarded to Lytle to facilitate Sturgis's repurchase of the oil investments.

While this evidence is relevant to the charges in the Illinois indictment that Patterson schemed to defraud Continental Illinois of the loyal services of Lytle, it was introduced at the Oklahoma trial for a different purpose. The government submitted the tape to support Count XIX of the Oklahoma indictment, which charged Patterson with misapplying PSB funds by loaning Sturgis the extra million dollars. The same is true of the exhibits introduced at the Oklahoma trial concerning the Sturgis deal. Collateral estoppel does not prevent the government from prosecuting Patterson for allegedly scheming to defraud Continental Illinois simply because the government used some of the same evidence in an unsuccessful attempt to prosecute Patterson in Oklahoma for allegedly misapplying PSB's funds. *See, e.g., United States v. Gentile*, 816 F.2d 1157, 1164 (7th Cir.1987).

Patterson also contends that the testimony of Russell Bainbridge, a former employee of Continental Illinois and PSB, presented the jury with the opportunity to convict Patterson of scheming to defraud Continental Illinois. Bainbridge testified about certain loan transactions charged in the Oklahoma indictment as a misapplication of PSB funds. When the government began questioning him about loans from PSB to Lytle and other Continental Illinois employees, the district judge stopped the inquiry, stating:

> Counsel, I'm having a most difficult time comprehending what you are accomplishing here, and I would again urge you to get to some issue in this lawsuit. I cannot tolerate presenting of endless testimony of every possible advice that Mr. Patterson may have gotten with regard to loans that are not involved here which may or may not have been booked at his request later on. Now I simply am not going to tolerate that. You are going to get to the issue or I am going to excuse this witness.

Record, Volume VI, p. 100. Thus, the Oklahoma trial judge did not allow the

government to question Bainbridge about PSB loans to Lytle and other Continental employees. This judicial warning, made in the presence of the jury, that any loans to Continental employees were not an issue in the trial does not lead us to conclude that the Oklahoma jury necessarily acquitted Patterson because he did not scheme to defraud Continental Illinois.

Patterson also notes that the government asked him on cross-examination about why he approved the three million dollar loan to Sturgis. He replied that Lytle's superiors told Lytle that he had to sell his business interest with Sturgis before Continental Bank could start doing business with Sturgis. Patterson submits that the question put in issue whether he was guilty of scheming to defraud Continental Illinois. Patterson's counsel later admitted at an *in camera* hearing that the question was totally irrelevant to the Oklahoma proceeding and was simply an attempt to impeach Patterson by casting some aspersions on him. Such a brief attempt to impeach a witness did not necessarily require the jury to find that Patterson did not scheme to defraud Continental Illinois.

### C. *Opening Statements and Closing Arguments*

Patterson argues that the government's opening statement and closing argument contain references to the upstream banks and Patterson's dealings with them. These statements include allegations that Patterson lied to, deceived, and damaged the upstream banks. He claims that this submitted the question of whether he schemed to defraud Continental Illinois to the jury so that the government is collaterally estopped from relitigating the issue.

One flaw in Patterson's argument is that even though the Oklahoma indictment identified Continental Illinois as one of the upstream banks, the indictment did not specifically charge that Patterson schemed to defraud Continental Illinois. In contrast, the indictment did specifically charge Patterson with scheming to defraud the Michigan National Bank, another upstream bank. Hence, the government's references to the upstream banks in general were relevant to the charge of scheming to de-

fraud the Michigan National Bank. This would also explain why the prosecutor singled out the Michigan National Bank in his opening statement to show how Patterson deceived it when he paid back loans with PSB funds when PSB was not obligated to make such a payment.

The most persuasive argument, however, against Patterson's theory is his own counsel's opening statement and closing argument. His counsel emphasized repeatedly that the government had to prove that Patterson intended to injure or defraud PSB. His counsel argued that as a substantial shareholder in PSB, it would be illogical for Patterson to injure PSB because he would be injuring his own financial holdings. Where the first judgment was based upon a general verdict of acquittal, as in this case, the Supreme Court has directed that the collateral estoppel inquiry " 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194 (quoting *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180 (1948)). Patterson has the burden to prove collateral estoppel. We may assume that the jury believed his counsel's argument and acquitted him because he did not intend to defraud PSB. This overrides the claim that the jury necessarily acquitted him because his conduct did not amount to a scheme to defraud Continental Illinois. Although the government alluded to Patterson's conduct towards Continental Illinois as one of the upstream banks that Patterson dealt with, we cannot say with certainty that the jury decided in his favor because he did not scheme to defraud Continental Illinois. Therefore, the government is not collaterally estopped from charging Patterson with a scheme to defraud Continental Illinois in a second suit.

### D. *The Jury Instructions*

Patterson claims that the court's jury instructions afforded the jury the opportunity to acquit him of scheming to defraud Continental Illinois. The district court characterized this argument as "disingenuous" primarily for two reasons. First, the court found that the Oklahoma judge "emphasized, in the course of his instructions,

that what was involved was a claimed misapplication of Penn Square funds, and an intent to defraud Penn Square." Second, the court found that the charge of "scheme to defraud," which did not particularize the intended target or victim of the scheme, had to be read in the same context as the charges of misapplication of funds. The court noted that the wire fraud instructions specifically stated "as charged in the indictment," and the indictment was sent with the jury during deliberations. The court reasoned that because the indictment charged solely a scheme to defraud PSB and the Michigan National Bank, it could not be said with assurance that the jury found no scheme to defraud Continental Illinois.

The district court correctly described the misapplication instruction. The Oklahoma judge made it clear in his instructions that Patterson was charged with misapplying PSB funds and that the jury had to find that Patterson acted with the intent to injure or defraud PSB or with willful disregard of the interests of PSB. Hence, there was no ambiguity concerning the identity of the victim of the misapplication of funds charge.

The district court's reasoning is less sound on the scheme to defraud charge. The court's statement that the indictment "charged solely a scheme to defraud PSB and the Michigan National Bank" is not entirely accurate. Although one count in the Oklahoma indictment identified the Michigan National Bank as a victim of the scheme, the remaining counts of scheming to defraud did not identify the target or victim of the scheme so that sending the indictment to the jury during deliberations did not have the curative effect assumed by the district court.

Nevertheless, this inaccuracy is not fatal to the district court's decision. As stated previously, the Oklahoma indictment did not allege a scheme to defraud Continental Illinois, and the instructions the court gave to the jury did not refer to Continental Illinois or contain any references to participating banks. The jury's general verdict of acquittal indicates nothing more than its probable acceptance of Patterson's defense that he did not intend to defraud PSB. Thus, we cannot say with certainty that the jury based its decision on the lack of a scheme to defraud Continental Illinois.[5]

### III.

In conclusion, the entire Oklahoma trial record does not demonstrate with assurance that the jury necessarily established that Patterson did not scheme to defraud Continental Illinois. Therefore, the government is not collaterally estopped from trying Patterson on these charges under the Illinois indictment, and the decision of the district court is

AFFIRMED.

---

5. In his reply brief, Patterson points out that the government violated our briefing schedule order of April 23, 1987. That order directed each party to serve the clerk and opposing counsel on the dates specified and that service by mail did not extend this schedule. The government was tardy by one day in getting its brief to Patterson's counsel, and he asks that we strike the brief or impose sanctions for the delay. While we do not condone a violation of an order from this court, we decline to sanction the government for its behavior because Patterson has not shown that he was prejudiced by the delay of one day. His reply brief was timely filed and more than adequately addressed the issues, and his counsel appeared equally well prepared at oral argument.