**UNITED STATES of America, Plaintiff,**

**v.**

**Theodore S. FORMAN, Defendant.**

**No. 96–CR–80978.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 30, 1997.

Alan Gershel, David Diebold, Asst. U.S. Attys., Detroit, MI, for plaintiff.

Gary J. McInerney, Grand Rapids, MI, for defendant.

*OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS INDICTMENT AND MOTION TO CONSIDER JUROR AFFIDAVITS*

ROSEN, District Judge.

## I. INTRODUCTION

This matter is presently before the Court on Defendant Theodore S. Forman's Motion to Dismiss Indictment and Motion to Consider Juror Affidavits. Having reviewed and considered the parties' original and supplemental briefs and exhibits in support thereof, and having heard the oral arguments of counsel, the Court is now prepared to rule on Defendant's Motions. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

*BACKGROUND*

Defendant Theodore S. Forman is a former federal prosecutor who, in 1992, worked as a trial attorney prosecuting criminal tax cases in the Criminal Enforcement Section of the Tax Division of the Justice Department in Washington, D.C.

During 1992, the Organized Crime Strike Force of the United States Attorney's Office in Detroit began an investigation of reputed Mafia boss, Vito Giacalone, and his attorney Nathaniel C. Deday LaRene. As part of this investigation, a grand jury was convened in the Eastern District of Michigan.

Although the Giacalone/LaRene investigation initially focused on allegations of extortion and money laundering, the focus of the investigation subsequently turned to tax evasion. Special Agent Frank Scartozzi of the IRS was assigned to the investigation and he subsequently prepared a 1200–page Special Agent's Report ("SAR") that detailed his findings. Included in this report were transcripts from the grand jury proceedings; the names, addresses and telephone numbers of witnesses who had testified before the grand jury; a summary of the government's investigation; a statement of the government's theory of prosecution of the case; and a discussion of potential defenses to the prosecution.

Because all criminal tax evasion prosecutions must be approved by the Tax Division of the Justice Department in Washington in March 1992, the U.S. Attorney for the Eastern District of Michigan sent the case file for the Giacalone/LaRene investigation, which included Agent Scartozzi's SAR, to the Tax Division in Washington. The case was then assigned to criminal tax enforcement attorney Curtis Nash, who at the time was Forman's office mate.

In October 1992, while the grand jury investigation of Giacalone and LaRene was still ongoing, federal agents who were conducting a separate investigation concerning Giacalone executed a search warrant at Giacalone's office. During the search of Giacalone's office, the agents unexpectedly found a copy of Special Agent' Scartozzi's SAR for the Giacalone/LaRene case.

The FBI subsequently investigated the matter to determine how the Giacalone/LaRene SAR came into Giacalone's possession.

In the course of the investigation, the FBI began interviewing everyone in the Justice Department Washington office where the Giacalone/LaRene file was kept. When he was first interviewed, Forman denied ever having seen or touched the SAR. However, after the SAR was dusted for fingerprints and Forman's prints were found on it, Forman ultimately admitted to the FBI Special Agent assigned to the case that he had indeed photocopied the SAR and delivered it to his boyhood and life-long friend, Paul Corrado, whose father, Anthony Corrado, is a reputed member of the Giacalone organized crime syndicate. Forman claimed, however, that he provided the copy of the SAR under duress because he believed that his father's life was in danger if he did not provide assistance to Giacalone.

Forman's story was that his mother, Helen Formanczyk, a chronic gambler, had amassed nearly $500,000 in gambling debts and had squandered the family's entire savings. At some point, Mrs. Formanczyk got involved in narcotics trafficking. She was subsequently arrested and convicted of drug trafficking in 1990, and since that time has been serving an 11–year sentence.

Forman claimed that after his mother was imprisoned, men began to visit his father demanding payment of Helen Formanczyk's gambling debts. Forman allegedly discussed the threats with his friend, Paul Corrado, who supposedly told him that the men were serious about collecting the debts. When Forman asked Corrado if there was anything that Corrado could do to protect his father, Corrado allegedly responded that he would help if Forman obtained information that would help Giacalone "beat the case" against him. Forman claimed that it was in order to insure his father's safety that he copied the Scartozzi SAR and delivered it to Corrado.

*PROCEDURAL HISTORY*

A grand jury subsequently indicted Forman on two counts: one count of obstruction of justice in violation of 18 U.S.C. § 1503 for obstructing the grand jury investigation of Giacalone and LaRene, and one count of criminal contempt in violation of 18 U.S.C. § 401(3) for violating Fed.R.Crim.Pro. 6(e)(2) by disclosing, without proper authority, matters occurring before a federal grand jury.

The matter proceeded to a trial before a jury in November 1993. At trial, Forman raised the affirmative defense of duress. After a three-day trial, the jury deliberated for a day and a half before returning a verdict of not guilty on the obstruction of justice charge, but guilty on the criminal contempt count.

Forman was subsequently sentenced to 36 months on the criminal contempt conviction. After he had served 16 months of that 36–month sentence, the Sixth Circuit reversed Forman's conviction, finding that, because he was not assigned to work on the Giacalone/LaRene case in any official capacity, he was not subject to Rule 6(e)(2)'s grand jury proceedings secrecy requirement. *See, United States v. Forman,* 71 F.3d 1214 (6th Cir. 1995).

Following the Sixth Circuit's reversal of Forman's conviction, the Government indicted Forman under a new theory, charging him this time for theft of government property in violation of 18 U.S.C. § 641.

Forman now moves to dismiss this new indictment, proffering three arguments: First, that this new prosecution violates the constitutional prohibition of double jeopardy; second, that because he was acquitted of one

count in the original trial, the facts cannot be relitigated under the rule of collateral estoppel:[1] third, that the fact that the new charges were filed after he had won his appeal creates a presumption of vindictive prosecution.

### III. DISCUSSION

A. NOTWITHSTANDING THE SIXTH CIRCUIT'S RECENT DECISION IN RASHAD v. BURT, THE BLOCKBURGER "SAME ELEMENTS" TEST REMAINS THE TEST TO BE APPLIED IN DETERMINING WHETHER THE INSTANT PROSECUTION OF DEFENDANT FORMAN VIOLATES THE CONSTITUTIONAL PROHIBITION AGAINST DOUBLE JEOPARDY.

The Fifth Amendment of the United States Constitution prohibits the prosecution of an individual twice for the same offense: No person shall "be subject for the same offence to be twice put in jeopardy of life or limb." For purposes of the Double Jeopardy clause's protection in the context of successive prosecutions for the "same offense", the Supreme Court has determined that the double jeopardy bar applies if the two offenses for which the defendant is tried cannot survive the "same elements" test first established in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The "same elements" test (often referred to as the *Blockburger* test) inquires whether each offense contains a element not contained in the other; if not, they are the "same offense" and double jeopardy bars successive prosecution. *See United States v. Dixon*, 509 U.S. 688, 696–97, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993).

In *Dixon, supra*, the Supreme Court reiterated its adherence to the *Blockburger* "same elements" test and expressly rejected the "same conduct" approach taken by the Court in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which is the approach urged upon this Court by De-

fendant Forman in this case. Under the *Grady* test, the Double Jeopardy clause was held to bar a second prosecution "if to establish an essential element of an offense charged in that prosecution, the government [would] prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U.S. at 509–11, 110 S.Ct. at 2087. *Grady*, however, was expressly **overruled** in *Dixon*. 509 U.S. at 703–05, 113 S.Ct. at 2860:

> Unlike [the] *Blockburger* ... definition of what prevents two crimes from being the "same offence", [which] has deep historical roots and has been accepted in numerous precedents of this Court, *Grady* lacks constitutional roots. The "same-conduct" rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy.

As further explanation for its overruling of *Grady*, *Dixon* incorporated by reference the *Grady* dissent, *id.*, in which Justice Scalia, joined by Justices Rehnquist, Kennedy and O'Connor, explained:

> *Blockburger* furnishes, we have observed, the "established test" for determining whether successive prosecutions arising out of the same events are for the "same offence". This test focuses on the statutory elements of the two crimes with which a defendant has been charged, **not on the proof that is offered or relied upon to secure a conviction.** "If each statute requires proof of a fact that the other does not, the *Blockburger* test is satisfied, **notwithstanding a substantial overlap in the proof offered to establish the crimes.**"

495 U.S. at 527–29, 110 S.Ct. at 2097 (citations omitted and emphasis added.)[2]

The foregoing discussion makes clear that Defendant Forman's reliance on the *Grady* "same conduct" test in arguing that his present indictment should be dismissed is wholly without merit.

Forman, however, also relies upon the Sixth Circuit's recent decision in *Rashad v.*

---

1. Forman also has moved in limits to exclude certain evidence from the former trial under the doctrine of collateral estoppel. The Court will withhold ruling on the *in limine* motion until the commencement of trial.

2. The Supreme Court recently re-affirmed *Dixon* and reiterated its rejection of the "same conduct" test in *Hudson v. United States*, —— U.S. ——, ——, 118 S.Ct. 488, 495–96, 139 L.Ed.2d 450, (1997).

*Burt,* 108 F.3d 677 (6th Cir.1997), *reh'g denied* (June 18, 1997), *petition for cert filed,* S.Ct. No. 97–343, 66 U.S.L.W. 3170 (Aug. 25, 1997).[3]  *Rashad* was a habeas corpus action in which the petitioner alleged that his state court felony conviction for possession with intent to deliver over six hundred and fifty grams of cocaine after an earlier conviction for possession of the same substance, but not the same cocaine, violated his rights under the Double Jeopardy Clause. Rashad's two convictions grew out of the execution of a single search warrant at a house on Greydale in Detroit.

On the day that the warrant was executed, Rashad arrived at the Greydale house in a Lincoln automobile. After Rashad entered the house, the officers executed the warrant. In so doing, they brought with them a drug detection dog. The dog reacted to a locked storage area in the basement in which the officers discovered and seized over five kilograms of cocaine, including several kilogram-sized bricks, wrapped in green paper.

In the course of executing the warrant, the narcotics dog also alerted officers to the interior of Rashad's automobile, which was parked in the driveway. When cocaine residue was found in the car, it was impounded for subsequent forfeiture and taken into police custody.

Rashad was subsequently charged with possession with intent to deliver the cocaine found in the basement storage area of the Greydale house. Approximately one week later, an informant told the police that cocaine was also stored in a hidden compartment in Rashad's Lincoln. The police then obtained a search warrant for the car which was still in police custody, and upon executing the search warrant, found in a compartment in a rear quarter panel of the car approximately five kilograms of cocaine, including four separate kilo-sized packages, wrapped, like the cocaine found in the house, in green paper.

Rashad was tried before a jury for possession with intent to distribute the cocaine found in the house. The jury found Rashad guilty of the lesser included charge of "possession", only, and he was sentenced to 40 to 100 years imprisonment.

Six months later, in a bench trial, Rashad was tried on a charge of possession with intent to distribute in connection with the drugs found in the hidden compartment in the Lincoln. After unsuccessfully moving to dismiss on double jeopardy grounds, Rashad was found guilty as charged and sentenced to life imprisonment without the possibility of parole.

Rashad appealed this second conviction to the Michigan Court of Appeals, asserting as one of the bases for his appeal an argument that his second conviction violated the Double Jeopardy Clause. That court held that the trial and conviction for the drugs found in the car was not barred by double jeopardy. *People v. Michigan,* Nos. 118136, 118877, 124060 (slip.op.1992).[4]  The Michigan Su-

---

3. The petition for certiorari remains pending as of this date.

4. The Michigan Court of Appeals stated:

"The Double Jeopardy Clauses of both the United States and Michigan Constitutions protect against a second prosecution for the same offense after acquittal or conviction and against multiple punishments for the same offense." *People v. Jackson,* 153 Mich.App. 38, 41, 394 N.W.2d 480 (1986). In Michigan, the same transaction test is the proper standard to be applied when examining successive prosecutions. *Jackson,* 153 Mich.App. at 42, 394 N.W.2d 480. The same transaction test requires the prosecutor to join at one trial all the charges against defendant which grew out of a continuous time sequence and displayed a single intent and goal. *People v. Sturgis,* 427 Mich. 392, 401, 397 N.W.2d 783 (1986).

In this case, the record does not indicate a meaningful factual connection between the cocaine found in defendant's home and that found several days later in the quarter panel of defendant's vehicle. *People v. Jackson,* 153 Mich.App. 38, 49–50, 394 N.W.2d 480 (1986). Cocaine confiscated from the home was found with packaging materials, sifters or mixers and cutting agents, implying that defendant intended this supply for future distribution. However, the cocaine confiscated from the Lincoln supports the independent goal of transporting or delivering *that* cocaine to an unknown destination. Furthermore, it was never established that the cocaine found in the Lincoln was part of the same cocaine found in the house. The facts indicate that the defendant's possession of the cocaine in the home was simultaneous to his possession of the cocaine in the vehicle, and not one unitary and continuous criminal episode. *Jackson,* 153 Mich.App. at 50, 394 N.W.2d 480. Finally, the police did not get a search warrant for the Lincoln until an infor-

preme Court denied Rashad's application for leave to appeal. *People v. Rashad,* 442 Mich. 905, 503 N.W.2d 445 (1993).

Rashad subsequently petitioned for a writ of habeas corpus on double jeopardy grounds. The district court found that Rashad's double jeopardy rights violated and granted the writ, and the Sixth Circuit affirmed.

Although the Sixth Circuit acknowledged that the traditional test for double jeopardy claims is the *Blockburger* "same elements" test, the court determined that the *Blockburger* test does not apply in cases involving successive prosecutions for conduct "that may constitute the same act or transaction." 108 F.3d at 679. Thus, the *Rashad* court determined that a different standard was required for successive prosecution cases, and established the "same evidence" test. *Id.* at 680. The court stated:

> Although it plays a prominent role in double jeopardy analysis, the *Blockburger* test is insufficient where, as here, the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction. Indeed, multiple charges that satisfy the *Blockburger* standard, and thus may properly be joined in a single prosecution, may nevertheless violate double jeopardy if prosecuted successively. *Jordan v. Commonwealth of Virginia,* 653 F.2d 870, 873 (4th Cir.1980). As the Supreme Court has stated, "The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Brown [v. Ohio],* 432 U.S. [161], 166 n. 6, 97 S.Ct. [2221], 2226 [n. 6, 53 L.Ed.2d 187 (1977)].
>
> \*    \*    \*    \*    \*    \*
>
> The *Blockburger* standard, then, does not help us resolve a double jeopardy inquiry involving successive prosecutions. The concern in such a situation is whether a defendant is being prosecuted twice for the same act or transaction. The proper standard for determining if this has occurred, and thus if the two prosecutions violate double jeopardy, is to ask whether

the actual evidence needed to convict the defendant in the first trial is the same as the evidence needed to obtain the second conviction. If the same evidence will serve for both convictions—irrespective of whether the convictions are under statutes that satisfy *Blockburger*'s "same elements test—the second prosecution is barred by double jeopardy." *See Jordan,* 653 F.2d at 873 (citing *Ex parte Nielsen,* 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889).) Stated another way, successive prosecutions based on the same "fact situation" are barred by double jeopardy if the separate charges could have been joined and no significant additional fact was required in the second prosecution.

108 F.3d at 679–80.

Applying its "same evidence" test, the *Rashad* court determined that Rashad's second prosecution violated double jeopardy. *Id.* at 680. The court stated:

> Applying this ["same evidence"] standard to the present case demonstrates that Rashad's second prosecution did violate double jeopardy principles. Rashad's first prosecution charged him with possession with intent to distribute cocaine, and involved the drugs found in the Greydale residence. Rashad's second prosecution was also for possession with intent to distribute cocaine, and was based on the drugs found in the Lincoln automobile. The only additional fact required to convict on this second prosecution was the cocaine's location in the car. This fact is not "significant" under the circumstances, however, because the location of the drugs in the car does not indicate a separate crime from that indicated by the drugs in the house—possession with intent to distribute.

*Id.* at 680–81.

Defendant maintains that *Rashad* mandates dismissal of the present indictment against him because the same facts and evidence used to prosecute him for obstruction of justice will be used to prosecute him for theft of government property. The Government maintains that *Rashad* is not control-

mant told police that that the vehicle contained contraband.

Slip op. at 3–4.

ling, arguing that the Sixth Circuit's discussion of a "same evidence" test in *Rashad* is dicta. There is clearly no merit in this contention. Far from being dicta in the case, the establishment and application of a "same evidence" test is at the heart of the *Rashad* decision. However, the Court agrees with the Government that *Rashad* cannot be applied in this case for several reasons.

First, as the Government points out, the *Rashad* court never even mentioned the Supreme Court's decision in *Dixon*, which expressly overruled *Grady* and its "same conduct" test and attendant holding that the use of the same evidence to secure two separate convictions violates double jeopardy. Even more troubling in the context of the instant case is the fact that, to the extent that the *Rashad* court carved out a "same evidence" test because it decided that the *Blockburger* standard does not apply for successive prosecutions (as opposed to multiple charges in the same trial or indictment), 108 F.3d at 679, the *Dixon* majority flatly rejected the notion that the double jeopardy test is different for successive prosecutions. Responding to Justice Souter's dissent in *Dixon*, the majority stated:

> The centerpiece of Justice Souter's analysis is an appealing theory of a "successive prosecution" strand of the Double Jeopardy Clause that has a different meaning from its supposed "successive punishment" strand. We have often noted that the Clause serves the function of preventing both successive punishment and successive prosecution, see, *e.g.*, *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), but there is *no* authority, except *Grady*, for the proposition that it has different meanings in the two contexts.

509 U.S. at 703–05, 113 S.Ct. at 2860 (emphasis in original).

The Sixth Circuit's reliance on the fact that *Rashad* involved successive prosecutions for distinguishing the case from *Blockburger* and its "same elements" test is particularly troublesome in light of the fact that *Dixon* — which expressly reaffirmed the *Blockburger* test—was itself a successive prosecution case. Dixon was on bond for a murder charge. As a condition of bond, he was under a written order not commit "any crimi-

nal offense." 509 U.S. at 690–92, 113 S.Ct. at 2853. While on bond, Dixon was arrested for possession with intent to distribute cocaine. The trial court held a hearing and found him guilty of contempt of court for violation of the condition not to commit any criminal offense. The Supreme Court held that a second prosecution of Dixon, this time under the drug statute for possession with intent to distribute cocaine, was prohibited. The Court reasoned that the court order entered as a condition of Dixon's bond "incorporated the entire criminal code". 509 U.S. at 694–96, 113 S.Ct. at 2855. Therefore, to prove the contempt charge, it was necessary to prove that Dixon violated a particular statute. The drug offense was, therefore, included within the contempt offense, just as an underlying felony is included in a felony-murder charge. Thus, the Court found that "Dixon's drug offense did not include any element not contained in his previous contempt offense, [and, therefore] his subsequent prosecution [for the drug offense] violates the Double Jeopardy Clause." 509 U.S. at 700, 113 S.Ct. at 2858.

Equally problematic is the *Rashad* court's reliance on a footnote in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), as support for its establishment of a new "same evidence" test to replace the *Blockburger* test. Indeed, the *Dixon* majority specifically rejected the dissent's reliance on *Brown* as support for alternatives to the *Blockburger* test, stating:

> *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), contains no support for [Justice Souter's] position except a footnote that cites [*In re*] *Nielsen* [131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889)] for the proposition that "[t]he *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Brown, supra*, at 166–167, n. 6, 97 S.Ct., at 2226, n. 6. Not only is this footnote the purest dictum, but it flatly contradicts the text of the opinion which, on the very next page describes *Nielsen* as the first Supreme Court case to endorse the *Blockburger* rule. *Brown, supra*, at 168, 97 S.Ct. at 2226. Quoting the suspect dictum multiple

times ... cannot covert it into case law....

509 U.S. at 706, 113 S.Ct. at 2861.

Finally, *Rashad* relies heavily upon the Fourth Circuit's 1980 decision in *Jordan v. Commonwealth of Virginia*, 653 F.2d 870 (4th Cir.1980), for support for its new "same evidence" test. However, *Jordan* pre-dates *Dixon* by thirteen years and, in light of *Dixon*'s express rejection of a "same conduct" test, it would seem *Jordan* no longer has any viability. Furthermore, *Jordan* relied on *In re Nielsen, supra*, as support for its rejection of *Blockburger* and the adoption of an expanded test which turned on the inquiry of whether "the evidence required to warrant a conviction upon one of the prosecutions would have ben sufficient to support a conviction upon the other." The *Dixon* majority had this to say about the proposition that *Nielsen* expands the *Blockburger* double jeopardy test:

> The fountainhead of the "same-conduct" rule, [Justice Souter] asserts, is in *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). That is demonstrably wrong. *Nielsen* simply applies the common proposition, entirely in accord with *Blockburger*, that prosecution for a greater offense (cohabitation defined to require proof of adultery) bars prosecution for a lesser included offense (adultery). That is clear from the *Nielsen* Court's framing of the question ("Being of [the] opinion therefore, that habeas corpus was a proper remedy for the petitioner, *if the crime of adultery with which he was charged was included in the crime of unlawful cohabitation for which he was convicted and punished*, that question is now to be considered."...) and from its repeated observations that cohabitation required proof of adultery.

509 U.S. at 705, 113 S.Ct. at 2860–61 (emphasis in original).

The Sixth Circuit's failure to distinguish or even address *Dixon* and its clear rejection of the "same evidence" test even in successive prosecution cases obviously creates a conundrum for this Court. Clearly, this Court is bound to follow *Rashad* unless the Court determines that it squarely violates established Supreme Court precedent, in which case this Court must follow that precedent.

*See, Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F.Supp. 981, 984 (E.D.Pa.1994), and cases cited therein (federal district court is obliged to follow its circuit court's decision unless an opinion of the Supreme Court has overruled it). In other words, if this Court is able to distinguish and harmonize *Rashad* with apparently conflicting Supreme Court precedent, it is duty-bound to attempt that analytical task. Although admittedly difficult to do here given *Rashad*'s complete failure to even mention *Dixon*, the court believes it is possible to proffer an analytical construct which distinguishes *Rashad* and rationalizes its holding as consistent with *Dixon*.

*Rashad* can be distinguished by viewing that case under the particular facts presented there, i.e., the simultaneous possession of separately stashed quantities of drugs. Viewed in this light, it is can be said that the *Rashad* court merely applied previous Sixth Circuit (and Supreme Court) precedent in cases involving possession with intent to distribute controlled substances in reaching its conclusion that the successive prosecutions of Rashad under the circumstances could not stand.

As indicated, *Rashad*, involved two separate indictments, both charging possession with intent to distribute, but arising out of two separate "stashes" of drugs—one stash in the defendant's house, the other in the defendant's car. Prior to *Rashad*, the Sixth Circuit had considered the issue of simultaneous possession of separately stashed quantities of controlled substances in *United States v. Woods*, 568 F.2d 509 (6th Cir.1978). In that case, the defendants were charged in a four count indictment. Count I of the indictment charged possession with intent to distribute 111.36 grams of heroin, count 2 charged distribution of that amount of heroin, based upon a sale of the drug to an undercover narcotics agent. Counts 3 and 4 charged possession with intent to distribute 115.37 grams and 95.34 grams of heroin, based upon the recovery of separate caches of heroin from the front seat and the trunk of the defendants' car. The court considered the issue of whether counts 1, 3 and 4 were multiplicitous, and concluded that they were,

thereby precluding separate convictions and sentences. The court reasoned:

> "Possession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in [the drugs]. If Congress had wished to punish each act of dominion, it could have done so easily by forbidding the acts of dominion instead of the course of conduct...."

*United States v. Jones,* .533 F.2d [1387,] 1391 [(6th Cir.1976), *cert. denied,* 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977)].

We recognize, of course, that the congressional history and legislative purpose behind criminal laws may vary from law to law.... We recognize further that Congress, in enacting the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.,* and subsequent amendments, was no doubt intent upon strengthening the enforcement of existing drug laws.... However, as long as the statute does not graduate the gravity of the crime of possession of heroin by the quantity possessed, we see no indication that Congress intended to permit a multiplication of the offenses of possession at any given time by a defendant upon evidence that the heroin may merely have been separately packaged or stashed.

*Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), relied upon by the government, is inapposite. In *Gore,* the issue was whether a single narcotics sale could give rise to convictions for violating three different statutory provisions. In sustaining the convictions, the Court reaffirmed the rule of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which, as noted above, provides that two offenses can derive from the same act if each provision requires proof of a fact which the other does not....

**Here, we are not concerned with whether a single act violates a multiplicity of statutes as in *Gore* and *Blockburger*. Rather, we face what the Supreme Court has recognized to be a different issue: whether a course of conduct— here, possession with intent to distrib-**

ute—**can result in multiple violations of the same statute.** *Gore, supra,* 357 U.S. 386, 391, 78 S.Ct. 1280, 2 L.Ed.2d 1405; *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952). Our court has held that the "same facts" test in *Blockburger* is inapplicable to offenses charging a course of conduct, at least where Congress has not indicated the appropriate unit of prosecution. *Jones, supra,* 533 F.2d at 1391–92....

568 F.2d at 513–14, text plus n. 1.

Although *Woods* and the cases discussed therein were not cited by the Sixth Circuit in *Rashad,* they were cited and discussed at length in the Magistrate Judge's Report and Recommendation which was concurred in, and adopted by, the District Court, and formed the basis of the *Rashad* appeal. Therefore, it is at least reasonable to conclude that the appellate panel that decided *Rashad* considered *Woods* and its reasoning in reaching its conclusion that the facts in *Rashad* warranted deviation from the *Blockburger* "same elements" test.

■ In contrast, the instant case does not involve simultaneous possession of separate stashes of contraband or any "continuous course of conduct". Rather, it involves charges of different crimes under different Statutes which, as Sixth Circuit acknowledged in its reaffirmation of *Blockburger* in the *Woods* case, "*can derive from the same act* if each provision requires proof of a fact which the other does not."

The Court confesses that it is not completely comfortable with this analytical distinction, particularly since the Court sees some rather serious analytical shortcomings in basing a legal distinction upon the difference between the double prosecution for "simultaneous" possession of separate stashes of drugs (which would trigger double jeopardy protection) and the double prosecution of the same conduct or act under different statutes (which, under this theory, would not trigger jeopardy protection). However, in the Court's mind, the distinction is sufficient and preferable to the extreme step of a clear repudiation of *Rashad* and a refusal to follow it. The Court does express its strong hope that the Sixth Circuit will soon revisit this

area of the law and give some guidance to the lower courts by reconciling its decision in *Rashad* with what at least appears to be a possible failure to adhere to the Supreme Court's "same elements" test of *Blockburger* and *Dixon*.

For the foregoing reasons, this Court finds that *Blockburger/Dixon* remains the test in the Sixth Circuit for deciding double jeopardy questions in cases such as this one which involve the question of whether a single act can give rise to indictments (and convictions) for violating three separate statutes.

## B. APPLICATION OF THE BLOCKBURGER TEST IN THIS CASE

As indicated above, Forman was previously tried (and acquitted) for obstruction of justice in violation of 18 U.S.C. § 1503 for obstructing the grand jury investigation of Giacalone and LaRene. He was also tried (and convicted by the jury) of one count of criminal contempt in violation of 18 U.S.C. § 401(3) for violating Fed.R.Crim.Pro. 6(e)(2) which prohibits disclosure of matters occurring before a grand jury. In the present indictment, Forman is charged with violating 18 U.S.C. § 641, theft of government property.

Defendant argues that even if it is determined that the *Blockburger* "same elements" test is controlling, the Court must apply *Blockburger* from the vantage point of the particular facts of the case. He claims that viewed in this light, the present prosecution of him must be barred by double jeopardy because the only way he could have attempted to obstruct the Giacalone/LaRene investigation was to steal and wrongfully disclose the SAR. However, Defendant's "vantage point" argument is not supported by Supreme Court or Sixth Circuit precedent.

In *Blockburger*, the Supreme Court enunciated the following test for determining whether two offenses are the same for double jeopardy purposes:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.... A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

284 U.S. at 303–05, 52 S.Ct. at 182 (citations omitted)

In *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the Supreme Court made clear that the *Blockburger* test is to focus "on the proof necessary to prove **the statutory elements** of each offense, rather than on the actual evidence to be presented at trial." 447 U.S. at 416, 100 S.Ct. at 2265. *See also, United States v. Benton*, 852 F.2d 1456, 1465 (6th Cir.1988), *cert. denied*, 488 U.S. 993, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988) ("We fundamentally disagree [with defendant's contention] that the Supreme Court has necessarily changed the focus of *Blockburger* analysis from the statutory elements of the offenses argued to be the 'same' to the particular facts alleged in the indictment, or proffered as proof at trial....")

The obstruction of justice violation of 18 U.S.C. § 1503 on which Forman was tried in the first case requires proof of three elements:

(1) that a judicial proceeding was pending at the time alleged in the indictment;

(2) that the defendant had knowledge or notice that the proceeding was pending; and

(3) that the defendant corruptly endeavored to influence, obstruct or impede the due administration of justice in that proceeding.

[See *Forman I* Trial Transcript, vol. 4 p. 556.]

The criminal contempt violation of 18 U.S.C. § 401 which he faced requires proof that the defendant

(1) knowingly and willfully

(2) disobeyed

(3) Fed.R.Crim.Pro. 6(e) by disclosing, without proper authority, matters occurring before the grand jury.

To establish a violation of theft of government property under 18 U.S.C. § 641 Government must prove that the Defendant

(1) knowingly and without authority,

(2) stole, or converted to his own use or the use of another, or sold, or disposed of

(3) a record, voucher, money or thing of value belonging to the United States or any department or agency thereof.

■ Neither an obstruction of justice charge nor a charge of criminal contempt requires proof that the accused sold, conveyed, disposed of or converted to the use of another property belonging to the government. Similarly, the stolen property charge does not require proof of a pending judicial proceeding nor any knowing endeavor to obstruct such a proceeding, nor does it require proof of violation of a rule or order directed at the defendant, or even that the accused disclosed matters occurring before a grand jury. Clearly, the theft of stolen property charge contains one or more statutory elements which are not contained in the other two statutes.

Defendant argues that, notwithstanding the different statutory elements that are required to establish obstruction of justice, contempt and theft of government property, under the Supreme Court's holding regarding the contempt charge in *Dixon, supra,* this Court should find the present theft of stolen property charge barred by double jeopardy. The Court finds no merit in this argument.

As discussed above, *Dixon* involved a contempt charge for violating a bond condition not to commit "any criminal offense." The Court found that this order incorporated the entire criminal code. After Dixon had been found guilty of contempt for violation of the condition not to commit any crime by virtue of his arrest for possession with intent to distribute cocaine, the Court determined that he could not be subsequently separately tried for the drug offense because the drug offense had been necessarily included within the contempt offense.

There is no similar incorporation of one statute into another in this case. The obstruction of justice statute does not list Section 641 as a required predicate. The only elements of the crime are (1) a pending judicial proceeding; (2) the defendant's knowledge of the pendency of the proceeding; and (3) that the defendant corruptly tried to influence, obstruct or impeded the administration of justice in that proceeding. Even the contempt provision relied on in Forman's first trial does not incorporate that stolen property statute (or any other statute, for that matter). The only elements that had to be proven were that Forman knowingly and willfully disobeyed Rule 6(e) by disclosing matters occurring before the grand jury.

Therefore, under *Blockburger* and its progeny, the theft of stolen property charge in the current indictment is not barred by double jeopardy.

## C. COLLATERAL ESTOPPEL DOES NOT BAR THE INSTANT PROSECUTION

In *Forman I,* Defendant defended the obstruction of justice and criminal contempt charges by arguing that he committed the crimes under coercion and duress. As indicated, the jury returned a split verdict, rendering a not guilty verdict on the obstruction of justice charge but guilty on the criminal contempt charge. Defendant contends that because the jurors found him not guilty on the obstruction of justice charge, they necessarily had to have found that he copied and disseminated the Giacalone/LaRene SAR out of duress. Therefore, he argues that the doctrine of collateral estoppel bars any subsequent prosecutions also subject to duress.

The collateral estoppel doctrine is a separate component of the Fifth Amendment guarantee against double jeopardy. *See, Ashe v. Swenson,* 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). As the Court explained in *Ashe,* collateral estoppel "means simply that when an issue of ultimate fact has once been necessarily determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuit." *Id.,* 397 U.S. at 443, 90 S.Ct. at 1194. The burden is on the defendant to prove by convincing and competent evidence that the fact sought to be foreclosed was necessarily determined by the jury against the government in the prior trial. *United States v. Benton, supra,* 852 F.2d at 1466; *see also, Dowling v. United States,* 493 U.S. 342, 350–51, 110 S.Ct. 668, 107 L.Ed.2d 708

(1990) (adopting rule "plac[ing] burden on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.")

■ To ascertain whether an ultimate fact was "necessarily determined" by a prior criminal jury that rendered a general verdict of acquittal requires that the court "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a *rational jury* could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe, supra,* 397 U.S. at 444, 90 S.Ct. at 1194 (citation omitted and emphasis added.) Thus, the collateral estoppel doctrine presupposes that the jury in the prior proceeding acted rationally.

As the Sixth Circuit observed in *Benton, supra,* the court must be mindful that "it is very difficult to determine the basis for an acquittal." 852 F.2d at 1466. Furthermore, to prevail on his claim in this case, Defendant must show "more than that the ... jury might have, or even probably, found" that he acted under duress. *United States v. Patterson,* 827 F.2d 184, 187 (7th Cir.1987). "If a rational jury could have acquitted [Defendant] on any basis other than" a finding that he acted under duress, "then collateral estoppel does not bar the government" from prosecuting him again. *Id.*

■ Defendant's entire collateral estoppel argument here is premised upon the jury having found him not guilty on the obstruction of justice charge. Forman's trial counsel argued—and the jury was instructed—that if Defendant's obstruction of justice charge was excused by duress, then so was the criminal contempt charge. However, as indicated, the jury returned a split verdict—finding him not guilty of obstruction of justice but guilty of contempt of court. Both charges were based on the same conduct (copying and delivering the SAR without authorization), and the duress defense rested on the assertion that Defendant engaged in that conduct because he feared imminent physical harm to himself or his father. Thus, it would seem that a rational jury could not have grounded its split verdict on the duress defense. If the Court analyzes the entire

verdict in *Forman I* using "realism and rationality", *United States v. Levy,* 803 F.2d 1390, 1398–99 (5th Cir.1986), only two conclusions are possible: either the jurors found that the government failed to prove a unique element of the obstruction statute (i.e., that Defendant corruptly intended to obstruct the due administration of justice), or they ignored their instructions and compromised the verdict. As the Sixth Circuit observed in reversing the contempt conviction:

> Looking only at the duress defense and not at the different elements of each offense, only two alternative verdicts would logically be appropriate: guilty on both counts if the jury did not believe the duress story, or not guilty on both counts if the jury believed the duress story.

71 F.3d at 1220.

As the Government notes, if duress was the only issue for the jury to decide in the first trial, and if the jury, therefore, acted irrationally in splitting the verdicts, then there is no "convincing and competent evidence" that the jury actually found in Defendant's favor on that issue, and collateral estoppel does not apply. The Sixth Circuit has recognized that because "an acquittal need not be based on any jury factual finding", it is very difficult to determine the basis for an acquittal. *Benton, supra,* 852 F.2d at 1466. Thus, the court has implicitly recognized that in certain circumstances an estoppel claim can be defeated on the ground that the prior acquittal resulted from compromise or lenity, rather than a finding in defendant's favor on one of the elements or defenses. *See, United States v. Jenkins,* 902 F.2d 459, 463 (6th Cir.1990) ("Application of the collateral estoppel doctrine is premised on the assumption that the jury acted rationally and found certain facts in reaching its verdict.") *See also, Pettaway v. Plummer,* 943 F.2d 1041, 1048 (9th Cir.1991), *cert. denied,* 506 U.S. 904, 113 S.Ct. 296, 121 L.Ed.2d 220 (1992) (giving estoppel effect to a prior jury determination "where it is clear that there was not simply an inconsistent verdict in the first trial"); *Hess v. Medlock,* 820 F.2d 1368, 1374 (4th Cir.1987) (denying estoppel effect, because even if the acquittals could not be explained without assuming that the jury failed to find criminal intent, "the inconsistency of the verdicts on the issue of intent

would mean that the jury did not *necessarily* accept" the defendant's story (emphasis in original)); *United States v. Aguilar–Aranceta*, 957 F.2d 18, 24 (1st Cir.1992), *cert. denied*, 506 U.S. 834, 113 S.Ct. 105, 121 L.Ed.2d 64 (1992) ("Since we assume in our review of the record that the jury acted rationally, we cannot find that a rational jury would have been so inconsistent as to find 'no knowledge' as to one count, and 'knowledge' as to the other").

In this case, if the Court accepts Defendant's own assumption that the only issue for the jury to decide was duress, then the verdict was truly inconsistent. To the extent that the split verdicts can be reconciled, the only rational explanation for the split verdicts is that the acquittal must have rested on an added element of the obstruction charge that has no bearing on the instant indictment for theft of government property. The jurors were instructed that to convict on the obstruction of justice count, they needed to be convinced beyond a reasonable doubt that Defendant acted with "the specific intent o[r] purpose to obstruct" justice and that he acted "voluntarily and deliberately and for the purpose of improperly influencing or obstructing or interfering with the administration of justice". [Trial Tr. at 557–58.] By contrast, the intent element of the contempt charge, only required proof that the unlawful disclosure of grand jury material was done "knowingly [and] without prior judicial authorization." [Tr. at 558–59.] No corrupt purpose of influencing or obstructing or interfering with the administration of justice was required.

A rational jury could have concluded that Defendant's conduct was motivated by a desire to please his old friend (Corrado) or to cancel the alleged gambling debt owed by is mother to Giacalone. Or, just as plausibly, the jurors could have believed that Defendant did fear for his father's safety, but that there was no concrete or immediate threat as required for a valid duress defense. Under such circumstances, a rational jury could acquit Defendant of obstruction of justice on the ground that Defendant's intent or "purpose" was something other than to corruptly influence the grand jury investigation, and that his motivations and beliefs were inconsistent with such a corrupt purpose. If the jury's verdict was based on such a finding, then the Government cannot be estopped from proving its case of violating section 641. That statute only requires proof that Defendant knowingly stole or converted the property to his own use, not proof that he intended to harm the grand jury investigation.

Because an irrational verdict (based on lenity or compromise) rather than factual findings is not given estoppel effect, and because the only rational verdict in this case rests on an issue unrelated to duress, the Court finds that, regardless of which route the jury in the prior trial took, Defendant's motion to dismiss the present indictment on collateral estoppel grounds must be denied.

Apparently aware of the problem presented with his collateral estoppel argument in light of the split verdict rendered by the jury, Defendant alternatively argues that the Court should simply disregard the jury's determination that he was guilty on the contempt charge. However, to treat the contempt charge as if it was never considered by the jury, as Defendant asks, would violate the Supreme Court's directive that courts consider "*all* the circumstances of the proceedings." *Ashe, supra*, 397 U.S. at 444, 90 S.Ct. at 1194.

Furthermore, contrary to Defendant's assertions, the Sixth Circuit does not require each count to be separately considered in isolation when applying estoppel principles or that vacated guilty verdicts be ignored. In fact, in *United States v. Frazier*, 880 F.2d 878, 883 (6th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1142, 107 L.Ed.2d 1046 (1990), upon which Defendant relies for support for his contention, the court carefully reconciled the jury's acquittal on one count with its seemingly inconsistent failure to reach verdicts on the other counts. Other courts similarly have considered the significance of inconsistent but subsequently vacated guilty verdicts, even where the reason for vacating the verdict might justify disregarding they jury's finding on that count. *See, e.g., Pettaway supra*, 943 F.2d at 1045–46; *Price, supra*, 750 F.2d at 365.

## D. *CONSIDERATION OF JUROR AFFIDAVITS WOULD BE IMPROPER*

In an attempt to bolster his collateral estoppel argument, Defendant has filed a sepa-

rate motion asking the Court to consider affidavits he obtained from five of the jurors from his previous trial shortly after the Government filed its Response opposing his Motion to Dismiss to establish that, contrary to the implications of the split verdict, the jury found in his favor on the duress issue.

Whether post-trial affidavits of jurors may be considered in this case is governed by Fed.R.Evid. 606(b), which provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to bear on any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

There are only two commonly recognized exceptions to this rule. First, as explicitly provided in Rule 606(b), juror affidavits may be considered on the issue of "extraneous influence" on the jury. *See, Jacobson v. Henderson,,* 765 F.2d 12 (2d Cir.1985). Courts have also been generally willing to admit affidavits from former jurors when they concern the issue of a verdict being transmitted in error. *See, e.g., McCullough v. Consolidated Rail Corp.,* 937 F.2d 1167 (6th Cir.1991). The affidavits which Defendant Forman seeks to admit in this case clearly do not fit within either of these exceptions.

In support of his request that the Court consider these affidavits, Defendant relies upon *United States v. Barragan–Cepeda,* 29 F.3d 1378 (9th Cir.1994) and *Jacobs v. Marathon County, Wisconsin,* 73 F.3d 164 (7th Cir.1996), *cert. denied,* 517 U.S. 1251, 116 S.Ct. 2514, 135 L.Ed.2d 202 (1996).

In *Barragan–Cepeda,* the government indicted the defendant in 1993 alleging that he was an alien who had illegally reentered the United States after having been deported in violation of 8 U.S.C. § 1326. Barragan moved to dismiss the indictment on double jeopardy grounds because 13 years earlier, he had been previously tried and acquitted on a charge of violating Section 1326 and two other offenses. All three of the 1980 offenses required the government to prove that Barragan was an alien. Barragan claimed that the prior acquittals were based upon the fact that the jury found him to be an American citizen. Although the subsequent indictment was based upon his 1993 reentry into the country, Barragan argued that the government was collaterally estopped from relitigating a key element, i.e., his alienage. In support of that claim, Barragan introduced affidavits from two people who served as jurors in the 1980 trial. The district court ruled that the introduction of these affidavits was improper under Fed.R.Evid. 606(b) and refused to consider them. The Ninth Circuit reversed that ruling stating:

The opening clause of this rule is clear. Rule 606(b) bars the admission of juror testimony only upon an inquiry into "the validity of a verdict." It does not limit the admissibility of juror affidavits to determine what issues were decided in the prior proceeding. By proffering jury affidavits regarding the 1980 verdict, Barragan has not sought to impeach that verdict. Quite the contrary, he is attempting to rely upon that verdict. Thus, the district court erred in ruling that the juror affidavits were inadmissible under Rule 606(b).

29 F.3d at 1380.

The Seventh Circuit relied on *Barragan–Cepeda,* without any discussion, in deciding that juror affidavits could be considered in *Jacobs v. Marathon County.* ("Because the juror affidavits here were not offered as part of 'an inquiry into the validity of a verdict,' they were competent evidence admissible on Jacobs' claim of double jeopardy.") *See United States v. Barragan–Cepeda,* 29 F.3d 1378 (9th Cir.1994).[5]

___

5. Although the *Jacobs* court determined that the juror affidavits could be considered, the court found that their value as evidence of what the prior jury found was negligible, explaining:

This Court finds the Ninth and Seventh Circuit's analysis to be based on a hypertechnical reading of Rule 606(b) and contrary to the policy underlying the rule and other case law.

Although it is true that Rule 606(b) is explicitly directed at situations where there is an "inquiry into the validity of a verdict or indictment", as the court in *In re Ellerbee*, 177 B.R. 731 (Bankr.N.D.Ga.1995) observed, "This rule in no way implies, the converse— that a juror's affidavit may always be used to reveal the jury's mental process so long as the inquiry is about something other than the validity of the verdict." *Id.* at 738. In *Ellerbee*, the plaintiff sought to admit the affidavits of jurors in order to reveal whether the jury had relied on a particular element of the charge of libel in finding for the plaintiff. The court refused to consider the affidavits explaining, "Affidavits of jurors, offered to raise a collateral estoppel argument, are not admissible to explain what they say the jury decided, when the verdict, read with the charge, is silent on the point." *Id.*

Similarly, in *Ohio–Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 11 (N.D.Ill.1980), *rev'd on other grounds*, 745 F.2d 441 (7th Cir. 1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985), the court refused to consider a post-trial juror affidavit which was offered to support a collateral estoppel argument. The court stated: "Nor can the jury foreman's notes and affidavit be used to embellish the general jury verdict. The Court agrees that *to allow such inquiry into the deliberative process would be contrary to the policy considerations underly-*

> Even admissible post-trial juror affidavits should be taken with a lot of salt. The affidavits here are no exception.
> First, the affidavits were obviously lawyer-generated. That doesn't necessarily condemn them, but any affidavit, couched as these are in quasi-legalese which fits comfortably into a litigant's view of a case, invites the raising of an eyebrow or two. If affidavits were subject to a leading-question objection, one would be sustained to each of these identical five. Second, and related to the first, these affidavits were taken under controlled conditions. Lastly, they were secured three years after the trial. What this all means, in our view, is that although they were admissible, their weight is not particularly impressive.

*ing Fed.R.Evid. 606(b)."* *Id.* at 13 (emphasis added.)

The Advisory Committee Notes that accompany Rule 606 make it clear that in drafting the rule, the drafters were not concerned with whether or not a litigant seeks only to inquire into the validity of a verdict. Rather, than being concerned with the particular reason a litigant might have, the concern was protecting the jury process as a whole:

> Under the federal decisions, the central focus has been upon insulation of the manner in which the jury reached its verdict, and this protection extends to each of the components of deliberation, including arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process. Thus, testimony or affidavits of jurors have been held incompetent to show a compromise verdict . . . [or] misinterpretation of instructions. . . .

Advisory Committee Notes (1972 proposed rules). The Senate Judiciary Committee's Report further demonstrates the broad scope of the rule's intended coverage:

> [C]ommon fairness requires that *absolute* privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interest of protecting the jury system and the citizens who make it work, rule 606(b) should not permit *any* inquiry into the internal deliberations of the jury.

Senate Report No. 93–1277 (included in the Advisory Committee Notes).

> These observations regarding the juror affidavits should not be construed as a criticism of the attorneys who represented Jacobs in this appeal. . . . Our observations are offered simply to note that post-trial affidavits of individual jurors are rarely helpful to the process of reviewing the collective action of a jury. The institution of the jury has force only when it acts authoritatively by rendering a unanimous verdict. It is the verdict of the jury, not the individual expressions of jurors after a trial, that carries legal heft. In this case, the district court was not impressed with the affidavits. . . . We agree with that conclusion.
> 73 F.3d at 168–69.

Defendant seeks to admit the affidavits in this case to show that the jury decided the duress issue in his favor, and that its conviction of him only on the contempt charge was meant as a compromise verdict. As the Advisory Committee noted, admitting juror affidavits to show a compromise verdict would violate the policies underlying Rule 606(b). But more to the point, in a broad sense, by seeking to show a compromise verdict, Defendant, contrary to his assertions, *would* be placing the validity of the verdict in issue by showing that the jury's guilty verdict on the contempt charge was not given in accordance with the instructions given by the court that a finding for the Defendant on his duress defense would legally and necessarily excuse both the obstruction of justice and the contempt offense. This fact alone distinguishes this case from the Ninth and Seventh Circuit cases.

Moreover, it seems to the Court that because this case grows out of organized crime, inquiry into the mental operations and emotional reactions of jurors—which is exactly what Defendant Forman does here with his affidavits—presents an obvious possibility of juror tampering and harassment. This was precisely one of the considerations taken into account by the drafters of Rule 606. As the Advisory Committee observed, "The mental operations and emotional reactions of jurors in arriving at a given result would, if allowed as a subject of inquiry, place every verdict at the mercy of jurors and invite tampering and harassment." [Note to Subdivision (b) of Rule 606, Advisory Committee Notes, 1972 Proposed Rules.]

For all of the foregoing reasons, the Court declines to consider affidavits from members of the jury in *Forman I*.

### E. *THE PRESENT INDICTMENT IS NOT A "VINDICTIVE PROSECUTION"*

Forman's final argument for dismissal of his indictment is that he is being vindictively prosecuted. He argues that the prosecutors did not charge him with stealing government property in the first trial because they wanted to use it as a backup charge in case he was not convicted of the other two charges. He theorizes that the Government planned not to use this theft of government property charge as long as he was serving his sentence. However, when he won his appeal, the Government wanted to put him back in prison, and therefore, resorted to the "back-up charge".

Prosecutorial vindictiveness is prohibited by the Due Process Clause of the Fifth Amendment. "[F]or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional'." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (citations omitted).

To establish a claim of vindictive prosecution, the initial burden is on the defendant to

> affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome, or an attempt to seek self vindication. Where either the presumption of vindictiveness applies or the defendant has come forward with objective evidence of actual vindictiveness, the burden shifts to the government to come forward with evidence that the motivation behind the charge was not improper.

*United States v. Bullis*, 77 F.3d 1553, 1559 (7th Cir.1996). *See also, United States v. Raymer*, 941 F.2d 1031, 1039 n. 4 (10th Cir. 1991); *United States v. Gallegos–Curiel*, 681 F.2d 1164 (9th Cir.1982).

There is no evidence on record of personal animus or motivation to retaliate on the part of any of the prosecutors. However, as noted, in certain cases a presumption of vindictiveness may be found, alleviating the need for objective evidence of animus or retaliatory motivation.

A presumption of vindictiveness is raised when there is shown a "realistic likelihood" that vindictiveness was the motivation for the state action in question. *See United States v. Goodwin*, 457 U.S. 368, 376, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *United States v. Andrews*, 633 F.2d 449, 455 (6th Cir.1980) (en banc), *cert. denied.* 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981) ("Only when there is a situation presenting a

probability of vindictiveness does this due process interest come into play.")

The Sixth Circuit has determined that where the facts indicate that the present indictment would not have been brought had there been no acquittal of the defendant, a presumption of vindictiveness is raised. *United States v. Eddy,* 737 F.2d 564, 572 (6th Cir.1984); *United States v. McFadyen–Snider,* 590 F.2d 654 (6th Cir.1979). However, the presence of nothing more than a "punitive motivation" does not provide an adequate basis for establishing a realistic likelihood of vindictiveness. *Goodwin, supra,* 457 U.S. at 372–73. Rather, it must be shown that by bringing new charges against the defendant, the Government "upped the ante". The Government is deemed to have "upped the ante" where it is established that in obtaining a new indictment, the Defendant was placed in a worse position than the one he occupied before he exercised his right to seek review of his prior conviction. *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). A defendant is placed in a worse position when he faces the prospect of a stiffer sentence than what he faced in his initial indictment. *Thigpen v. Roberts,* 468 U.S. 27, 30, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984). *See also, Lane v. Lord,* 815 F.2d 876, 878 (2d Cir.1987) (holding that the presumption of prosecutorial vindictiveness only applies in situations in which a prosecutor lodges more severe charges following a defendant's post-conviction exercise of his right to appeal); *United States v. Gallegos–Curiel, supra,* 681 F.2d at 1168 (to establish prosecutorial vindictiveness, it must be shown that charges of increased severity were filed because of the exercise of a constitutional right).

The Government did not "up the ante" when it filed the theft of government property charge against Defendant because it did not put Forman in a worse position than he occupied before he filed the appeal. Unlike *Perry,* the Government has not substituted a felony for a misdemeanor. To the contrary, the new charge replaces one that carried a higher statutory maximum and a higher guideline range. As the Government notes, the result here might be different if Defendant's appeal had won him a new trial on the contempt count and the Government

then had superseded the indictment by adding new charges that increased his potential sentence. But that is not what happened here.

Even assuming that Defendant's indictment for theft of government property creates a presumption of vindictiveness, the presumption is rebuttable. The Court finds that the unusual turn of events in the first prosecution is sufficient to defeat Defendant's vindictiveness claim in this case. The Government sought its original two-count indictment based on its understanding of the elements of those offenses. The jury acquitted on the obstruction of justice count but convicted on the contempt count. The Sixth Circuit reversed the contempt conviction by being the first court to read Fed.R.Crim.Pro. 6(e)'s nondisclosure requirement in such a narrow manner. The Government, the District Court and the Sixth Circuit panel which denied Forman bond pending his appeal after he had identified this issue as a likely ground for reversal all found Defendant's legal position to be insufficient. A prosecutor's mistaken use of the wrong statute can rebut the presumption of vindictiveness. *See Hardwick v. Doolittle,* 558 F.2d 292, 301 (5th Cir.1977).

Here, the Government's "mistaken" use of the contempt statute, coupled with the jury's verdict, created a situation that warranted bringing the current indictment. *See United States v. Krezdorn,* 718 F.2d 1360, 1365 (5th. Cir.1983) (no vindictiveness when the government added a conspiracy count in reaction to the Court of Appeals' ruling that "other acts" evidence could only be admitted if a plan or scheme was an element of the offense charged); *United States v. Esposito,* 968 F.2d 300, 304 (3rd Cir.1992) (no vindictiveness when government brings a second indictment after acquittal; "the acquittal is a legitimate prosecutorial consideration because the State is not levying punishment for a right exercised but rather for crimes committed.") Given the circumstances here, and the novelty of the issue upon which the Defendant prevailed on appeal, the Government's mistake in the statute under which it initially prosecuted Defendant can only be deemed a good faith error. Clearly, prosecu-

tion under the contempt statute had at least a colorable basis in law. The fact that the Court of Appeals reversed and disagreed with the Government's interpretation of that statute should not in the least raise an implication that its subsequent prosecution of Defendant under a completely different statute with a lesser criminal penalty is in any way vindictive.

For all of these reasons, the Court must reject Defendant's claim of vindictive prosecution.

## CONCLUSION

For all of the reasons stated in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Indictment be, and hereby is, DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Consider Jurors' Affidavits be, and hereby is, DENIED.