**Chris JACOBS III, Petitioner–Appellant,**

v

**MARATHON COUNTY, WISCONSIN, Circuit Court, Respondent–Appellee.**

No. 95–1080.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1995.

Decided Jan. 5, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 15, 1996.

Randall Edward Paulson (argued), Office Of Public Defender, Milwaukee, WI, and Weldon Nelson (argued), State Public Defender, Wausau, WI, for Petitioner–Appellant.

Marguerite M. Moeller (argued), Office of Attorney General, Wisconsin Department of Justice, Madison, WI, for Respondent–Appellee.

Before WOOD, Jr., ROVNER, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

A gruesome tragedy was discovered in the early morning hours of July 5, 1987, in the town of Bern in rural Marathon County, Wisconsin. Sheriff's deputies, responding to a report of an "accident with injuries," arrived at the Kunz family residence and discovered the bodies of Randy, Marie, Irene, and Clarence Kunz. All had been shot to death. The deputies were told that the only other relative who lived in the house, Helen Kunz, was missing. The remains of what turned out to be the body of Helen Kunz were discovered nine months later in Taylor County, approximately 18 miles from the Kunz residence.

Even before the discovery of Helen Kunz's body, police attention focused on Chris Jacobs III as the perpetrator, or one of the perpetrators, of the crimes. Six months after the discovery of the four bodies at the home, and three months before Helen's remains were uncovered, Jacobs was arrested and detained over the weekend in connection with the homicides. He was released uncharged.

Eventually, based on tire track marks, shell casings, and other physical evidence, police arrested Jacobs again in August of 1988, and charged him with five counts of first degree murder—party to the crime.

He was tried before a jury in October of 1989 and acquitted on all five counts.

Almost four years after the trial, armed with additional evidence, the State charged Jacobs again, this time with the kidnapping and false imprisonment of Helen Kunz. Jacobs moved to dismiss the charges, claiming that the Fifth Amendment's prohibition against double jeopardy barred the State from charging him with the abduction that ultimately led to the death of Helen Kunz. The motion to dismiss was denied by the Marathon County Circuit Court, and that decision was upheld by the Wisconsin Court of Appeals. The Wisconsin Supreme Court declined to review the case, and Jacobs then moved to the federal court by filing a petition for a writ of habeas corpus in the United States District Court for the Western District of Wisconsin. The district court denied the petition and Jacobs appeals. We affirm.

■ The Double Jeopardy Clause of the Fifth Amendment provides that no one will "be subject for the same offence to be twice put in jeopardy of life or limb...." The clause affords protection against three classes of abuse. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Schiro v. Farley,* — U.S. —, —, 114 S.Ct. 783, 789, 127 L.Ed.2d 47 (1994) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). Mr. Jacobs' habeas petition invokes the first of these protections.

To better understand how the issue in this case is to be resolved, we turn first to the 1989 trial that ended in Jacobs' acquittal. In that case the jury had two options; to find Jacobs either guilty or not guilty of murder in the first degree as to each victim. The trial judge instructed the jury on the law as follows:

Before the defendant may be found guilty of murder in the first degree, the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following two elements of this offense.

First, that the defendant or another that he aided and abetted intended to kill Randy, Irene, Marie, Clarence and/or Helen Kunz. Second, that the defendant or another that he aided and abetted caused the death of Randy, Irene, Marie, Clarence, and/or Helen Kunz.

After ten hours of deliberations, the jury submitted the following written question to the court:

Would like "intent to kill" made clear. Can we separate "intent to muder [sic]." That is can we separate Chris Jacobs' intentions from possible accomplice's or accomplices' intention.

The note was accompanied by one of the pages of the judge's written instructions to the jury. The following paragraph was circled:

If a person intentionally aids and abets the commission of a crime, then that person is guilty of the crime as well as the person who directly commits it.

The court responded to the jury's question by writing:

Yes. You must look at the intention of the defendant. The person who directly commits a crime must have an intention to commit that crime. One who aids and abets must be found to have an intent to assist another in the commission of that crime before he can be found guilty.

A little over an hour after the judge answered the question, the jury returned a verdict of not guilty on all five counts.

■ Jacobs' first argument in support of his habeas petition is that the present charges against him are either analogous to or "species of" lesser included offenses of the first degree murder charge of which he was acquitted in 1989. Two lines of reasoning are offered in support of this argument. One is that the current charges were readily available to the State in the murder prosecution because felony murder was an available lesser included offense of the first degree murder charge. Kidnapping and false imprisonment were likewise available lesser-included offenses of felony murder. Because the State could have included the present

charges in the prior trial, Jacobs argues, it is barred by the Double Jeopardy Clause from bringing them now. The other line of reasoning pursued in support of this argument is that, while Jacobs was never charged with felony murder, the trial was litigated as a "robbery gone fatally wrong." Jacobs contends that the current charges are "analogous to" lesser included offenses of the uncharged felony murder case presented at his 1989 trial.

■ The fatal flaw in this argument is that, for purposes of double jeopardy analysis, we look to the charges *actually* brought against the defendant, not to all possible charges available to the prosecution. To do otherwise would be to follow the "same-conduct" test announced in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), a case expressly overruled in *United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The appropriate test for determining whether new charges are barred by the Double Jeopardy Clause was originally set out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "The test to be applied to determine whether there are two offenses or only one is whether each provision (i.e. charge) requires proof of a fact which the other does not." *Blockburger* at 304, 52 S.Ct. at 182. New charges will pass the *Blockburger* test as long as each charge requires proof of an element not required by the other. Evaluating the charges against Jacobs in the two prosecutions, we see that each charge requires proof of additional elements as demanded by the *Blockburger* test. First degree murder requires proof of both a killing and an intent to kill, elements which are not required to prove the charges of kidnapping or false imprisonment. Kidnapping and false imprisonment both include elements that are not required to be proven in order to secure a conviction for first degree murder. The *Blockburger* test is satisfied.

Jacobs attempts to support his argument with citations to *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), and *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). These cases do not address the central flaw in Jacobs' argument, however. All involve offenses for which the defendants had actually been charged. None of them hold, as Jacobs argues, that subsequent charges may be barred due to charges that could have been, but were not brought in an earlier prosecution.

■ Jacobs' second argument in support of his petition hinges on the principle of collateral estoppel. While the concept of collateral estoppel is perhaps more familiar in the context of civil procedure, the Supreme Court has explicitly recognized that collateral estoppel protection is inherent in the protection afforded by the Double Jeopardy Clause. *See Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). *Ashe* tells us that "when an issue of ultimate fact has been determined by a final and valid judgment, that issue cannot again be litigated between the same parties in any future lawsuit." The facts of the *Ashe* case illustrate the application of collateral estoppel to double jeopardy analysis. In *Ashe,* three or four men robbed a poker game involving six players, and Ashe was tried for the robbery of one of them. There was no question that a robbery had taken place; the only question was whether Ashe participated in it. Ashe was acquitted by the jury. He was then tried for the robbery of another one of the poker players. The second time he was convicted. Ashe challenged the conviction on double jeopardy grounds, and the Supreme Court found that the issue of whether Ashe was present at the scene of the robbery had necessarily been decided against the State in the first prosecution. The only way that a reasonable jury could have acquitted Ashe in the first trial was by finding a reasonable doubt about whether he was present at the scene of the robbery. Because proof of Ashe's presence at the scene was necessary to convict him in the second proceeding, the State was precluded under the doctrine of collateral estoppel from bringing the second charge.

■ In determining whether additional litigation of an issue is precluded, the burden is "on the defendant to demonstrate that the issue whose litigation he seeks to foreclose

was actually decided in the first proceeding." *Dowling v. United States,* 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). It is important to note that "issue preclusion attaches only to determinations that were necessary to support the judgment entered in the first action." *Schiro v. Farley,* —— U.S. ——, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (quoting Wright, Miller & Cooper). Mr. Jacobs must demonstrate first that the question of whether he participated in a kidnapping and false imprisonment of Helen Kunz was litigated in the 1989 murder trial, and then that the question was necessarily resolved against the State.

■ Jacobs' collateral estoppel argument is flawed because it focuses on what the jury *might* have decided in acquitting him of first degree murder, rather than what the jury *must* have decided in order to reach its decision. Collateral estoppel applies only where an issue was *necessarily* decided in a previous proceeding, and it is simply not the case that the question of whether Chris Jacobs participated in the events of July 4, 1987, was necessarily decided against the State in the 1989 trial. The jury could rationally have based its decision on the question of proof of an intent to kill rather than on the question of Jacobs' participation in the events. That the intent-to-kill element was critical to the jury's consideration of the case is obvious by the question, quoted earlier, that the jury sent to the judge near the end of its deliberations.

■ Jacobs argues that it was not any hang-up over "intent" that turned the trial his way, but rather that the jury concluded that he had nothing to do with the crimes in the first place. He says the jury concluded that he did not commit any crimes—first degree murder, felony murder, kidnapping, false imprisonment, or what-have-you, because it determined that he was not in or about the Kunz residence when the offenses were committed. To buttress this claim, Jacobs offers identical affidavits signed by five jurors which read:

> As a juror in the case of State v. Chris Jacobs, III, 88–CR–767, it was my verdict and the verdict of the jury that the defendant was not guilty of 5 counts of First Degree Murder as a Party to the Crime, including the murder of Helen Kunz. In arriving at that verdict I concluded that the State had not established its theory that the Defendant had been present at the Kunz residence at the time in question and had not established its theory that the Defendant had abducted or participated in the abduction of Helen Kunz.

Rule 606(b) of the Federal Rules of Evidence (§ 906.06(2) Wis.Stat. is the virtual equivalent) says:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

■ Because the juror affidavits here were not offered as part of "an inquiry into the validity of a verdict," they were competent evidence admissible on Jacobs' claim of double jeopardy. *See United States v. Barragan–Cepeda,* 29 F.3d 1378 (9th Cir.1994). But admissibility does not compel a finding of believability. Even admissible post-trial juror affidavits should be taken with a lot of salt. The affidavits here are no exception.

First, the affidavits were obviously lawyer-generated. That doesn't necessarily condemn them, but any affidavit, couched as these are in quasi-legalese which fits comfortably into a litigant's view of a case, invites the raising of an eyebrow or two. If affidavits were subject to a leading-question objection, one would be sustained to each of these identical five. Second, and related to

the first, these affidavits were taken under controlled conditions. Lastly, they were secured three years after the trial. What this all means, in our view, is that although they were admissible, their weight is not particularly impressive.

These observations regarding the juror affidavits should not be construed as a criticism of the attorneys who represented Jacobs on this appeal. We mean nothing of the sort. The attorneys have done a splendid job of briefing and arguing the issues presented in the case. Our observations are offered simply to note that post-trial affidavits of individual jurors are rarely helpful to the process of reviewing the collective action of a jury. The institution of the jury has force only when it acts authoritatively by rendering a unanimous verdict. It is the verdict of the jury, not the individual expressions of jurors after a trial, that carries legal heft. In this case, the district court was not impressed with the affidavits, finding that they were not sufficient to meet Jacobs' burden of showing that the issue of whether or not he kidnapped or falsely imprisoned Helen Kunz was necessarily resolved against the State in the 1989 trial. We agree with that conclusion.

We also recognize that in certain unique situations, with the right kinds of facts, a prosecutor can get a second kick at the cat, as the State does here, without violating the Double Jeopardy Clause of the Constitution. That is an inevitable by-product of the abandonment of the *Grady v. Corbin* "same-conduct" test in favor of an energized *Blockburger* "elements" test as explained two years ago by Justice Scalia in *United States v. Dixon.* It is true, of course, that this gives the prosecutor an advantage, but as the law stands today it is an advantage that she can appropriately seize.

For the reasons stated above, the decision of the district court denying Mr. Jacobs' petition for a writ of habeas corpus is affirmed.